365 So.2d 775 (1978)
Mark SUBLETTE, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 77-795, 77-1739.
District Court of Appeal of Florida, Third District.
December 12, 1978.
Rehearing Denied January 17, 1979.
*776 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Steven R. Jacob, Asst. Atty. Gen., for appellee.
Before HAVERFIELD, C.J., and PEARSON and KEHOE, JJ.
KEHOE, Judge.
In this appeal, appellant, defendant below, raises several points urging error in his conviction and ensuing sentence for first degree murder, robbery, burglary, and petty larceny. Of the points raised, two warrant discussion and require reversal. The other points raised on appeal are without merit and will not be discussed.
Appellant contends that the trial court erred in denying his motion to suppress certain statements obtained from him by custodial interrogation while he was a juvenile, at the time of his arrest, when the interrogating officers were aware of this fact and failed, pursuant to his request, to notify his parents prior to interrogating him.
At the hearing on appellant's motion to suppress, the following pertinent facts were established: Appellant was driving an automobile, occupied by his co-defendant at trial, which was stopped by police officers. Two of the officers approached the car and requested appellant to produce a driving license. When he responded that he did not have one, he was asked to exit the car. At this point, one of the officers asked appellant his name and age. Appellant responded and told the officer that he was seventeen. The officer then told appellant that he was investigating a burglary and homicide, and asked appellant "if he knew anything or had any knowledge" of the incident. Appellant replied that "All four of us went into the house." The officer then advised appellant of his constitutional rights. Appellant responded that his father was a police officer and that he understood his rights. Appellant then requested that the officers contact his father. The officers told appellant that they would contact his father when they arrived at the officers' office. Appellant continued to request that the officers contact his father. Appellant was transported to the Public Safety Department homicide office and, after being photographed and fingerprinted, was then taken to Youth Hall. Appellant was arrested at approximately 1:30 a.m.; he and the officers arrived at Youth Hall at approximately 3:45 a.m. At that time, one of the officers contacted an assistant state attorney who directed the officer to notify the appellant's parents. Thereafter, appellant's father was contacted and he came to Youth Hall. However, prior to notifying appellant's father and his arrival at Youth Hall, a narrative statement was obtained from appellant concerning the incident which led to the charges in this case. After the father arrived at Youth Hall, the officers sought to obtain a formal statement. Shortly after the statement commenced, appellant's father informed the officers that he wanted the questioning to stop and that he was going to retain counsel. At that point, the interrogation ceased. Appellant moved to suppress the statements which he made to the officers prior to his father's arrival. This motion, and like motions during trial, were denied by the trial court. It is to these denials which appellant assigns the error set forth above.
*777 In our opinion, the trial court erred in denying appellant's motion to suppress. Under the facts of this case, appellant's request for his father to be contacted constituted a continuous assertion of his privilege against self-incrimination and the statements given by him, prior to the arrival of his father at Youth Hall, were inadmissible. Section 39.03(3)(a), Florida Statutes (1975), establishes the following procedure to be followed by law enforcement officers when taking a child into custody:
"If the person taking the child into custody determines, pursuant to paragraph (c), that the child should be detained or placed in shelter care, he shall immediately notify the parents or legal custodians of the child and shall, without unreasonable delay, deliver the child to the appropriate intake officer ..." (Emphasis added.)
Where an officer who arrests a child fails to comply with this procedure, particularly, as in this case, after being specifically requested to do so, and interrogates a child, any statements obtained from him are inadmissible. See Dowst v. State, 336 So.2d 375 (Fla.1st DCA 1976); and § 39.03(3)(a), Fla. Stat.(1975). But cf. Doerr v. State, 348 So.2d 938 (Fla.2d DCA 1977) (no request by child to speak to parents). See also Weatherspoon v. State, 328 So.2d 875 (Fla.1st DCA 1976).
In another point, appellant contends that the trial court erred in denying his notions for a mistrial because counsel for the codefendant and the prosecutor clearly and unequivocally stated to the jury in closing argument that he had not testified in his own behalf. Appellant urges that these comments were a violation of his right to remain silent as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of The Constitution of the State of Florida.
In a criminal prosecution, comment upon the exercise by a defendant of the right to remain silent is forbidden. See, e.g., Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968); Shannon v. State, 335 So.2d 5 (Fla. 1976); Diecidue v. State, 131 So.2d 7 (Fla. 1961); Gordon v. State, 104 So.2d 524 (Fla. 1958); Singleton v. State, 183 So.2d 245 (Fla.2d DCA 1966); and Fla.R.Crim.P. 3.250. It has been held that not only is the accused protected by the Fifth Amendment from comments on the exercise of the right to remain silent by the trial judge or the prosecutor, "... an accused has a constitutionally guaranteed right of silence free from prejudicial comments, even when they come only from a co-defendant's attorney." DeLuna v. United States, 308 F.2d 140, 141 (5th Cir.1962).
The landmark decision in DeLuna announced the principle that an accused is entitled to a new trial where counsel for a co-defendant brings to the attention of the jury the fact that the accused did not testify. Apparently, the DeLuna principle has been accepted by all of the courts which have had occasion to consider the issue. See, e.g., United States v. Pinto, 438 F.2d 814 (3d Cir.1971); Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969); United States v. McKinney, 379 F.2d 259 (6th Cir.1967); United States v. Echeles, 352 F.2d 892 (7th Cir.1965), and Hayes v. United States, 329 F.2d 209 (8th Cir.1964).
The rationale for the principle set forth in DeLuna is as follows:
"If comment on an accused's silence is improper for judge and prosecutor, it is because of the effect on the jury, not just because the comment comes from representatives of the State. Indeed, the effect on the jury of comment by a co-defendant's attorney might be more harmful than if it comes from judge or prosecutor. A judge, in keeping with his high degree of responsibility to conduct a fair trial, would be expected to give a balanced, moderate explanation of the inferences to be drawn from silence. Similarly, but to a lesser degree, a prosecutor would be expected to recognize his responsibility for fair comment. But much less restraint can be expected from an attorney to whom no little latitude is *778 allowed when zeal, emotion, eloquence and the advocate's afflatus take hold of a jury argument." 308 F.2d at 152.
Thus it is the fact of comment rather than the source of comment that effects denial of the right to remain silent.
In this case, the record shows that both counsel for co-defendant and the prosecutor violated this rule by clearly informing the jury that appellant had not testified. In our opinion this was a violation of appellant's constitutional right to remain silent and constituted reversible error. Such error could not be cured by any curative instructions to the jury.
We recognize the efficacy to be served by trying defendants together in criminal trials; however, any hardship imposed to that end by the principle set forth above may be mitigated by determining as early as possible in the prosecutorial procession the existence of a potential problem and, accordingly, severing the defendants for trial. We note that in the instant case appellant both during pre-trial proceedings and during the trial requested such severance. Obviously, efficacy in cases such as these will be best served when such motions for severance are granted.
We have carefully considered the other points raised by appellant on appeal and find them to be without merit.
For the reasons set forth above, the judgment and sentence appealed must be reversed and the cause remanded for a new trial.
Reversed and remanded.
PEARSON, Judge (dissenting in part).
While I concur in the decision to reverse because of the prejudicial comments concerning defendant's failure to testify, I dissent from the holding which would reverse this cause on the basis that the defendant's conviction was invalidated by the State's failure to contact the defendant's parents until after the defendant had been taken to the police station. In Doerr v. State, 348 So.2d 938 (Fla.2d DCA 1977), the Court of Appeal for the Second District held:
* * * * * *
"We do not believe that the mere fact the Supreme Court chose to interpret the stricter language of another portion of the predecessor of Section 39.03(3)(a) as invalidating a confession means that court would interpret the language of the section concerning the notification of parents to mean that any confession given prior to the notification must automatically be suppressed." 348 So.2d at 941.[1]
Also, I am impressed with the fact that the defendant immediately confessed upon being asked by the officer "... if he knew anything or had any knowledge . ." of the incident.
NOTES
[1] This issue has been certified to the Florida Supreme Court in Doerr v. State, Case No. 52,275.