THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KELLY B. WILLIAMS, Defendant-Appellant.

Fifth District No. 77-434

Opinion filed May 8, 1980.

248

Bruce D. Stewart, of Stewart and Stewart, of West Frankfort, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Kelly B. Williams, and his co-defendant, Paul Nichols, were convicted of the murder of Joseph Mosley following a joint jury trial in the Circuit Court of St. Clair County. Defendant was sentenced to a term of 25 to 75 years.

On appeal, defendant contends that (1) the joint representation of himself and co-defendant, Paul Nichols, by the public defender's office

denied him effective assistance of counsel; (2) the denial of his motion for severance denied him his right to confrontation; (3) the court abused its discretion in denying his motion for mistrial; and (4) the court abused its discretion in not ordering a competency examination upon the request of defense counsel.

Kelly B. Williams and Paul Nichols were jointly indicted and tried for the murder of Joseph Mosley. The office of the public defender was appointed to represent both the defendant and Nichols.

Defendant and Nichols at the time of their arrests both made similar inculpatory statements to the police indicating that defendant, not Nichols, had inflicted the injuries which resulted in the victim's death. Motions to suppress based on the involuntariness of the confessions were denied.

Defendant and Nichols filed pretrial motions for severance, asserting that their conflicting and inconsistent defenses made separate trials necessary. At the hearing on the motions, defendant stated that his intended defense would be that Nichols and another individual, and not he, had committed the crime and that his prior statement to the police was involuntary. Nichols intended to present an insanity defense but not deny his presence when the offense was committed. Defendant argued that having three versions of the crime, his prior statement, Nichols' statement and his intended defense would unduly confuse the jury. He further contended that evidence exculpating him would lose its importance if introduced at the same trial with Nichols. The State argued that Nichols' insanity defense was not antagonistic to defendant's defense. The State further argued that neither defendant would be prejudiced by the introduction of either of the statements since they were substantially similar. The court denied the motion for severance finding that the defenses were not antagonistic and that the introduction of the statements of defendant and Nichols would not violate defendant's sixth amendment right to confrontation.

Defendant contends on appeal that a *per se* conflict of interest existed denying him effective assistance of counsel based on the joint representation by the public defender's office when he and Nichols asserted inconsistent and antagonistic defenses.

It is fundamental that the right to effective assistance of counsel guaranteed to criminal defendants by the sixth and fourteenth amendments to the United States Constitution entitles a defendant to the undivided loyalty of counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) The Supreme Court of Illinois has held that requiring or permitting one attorney or individual assistants from the same public defender's office to represent multiple defendants is not a

*per se* violation of the right to effective assistance of counsel. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157; *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) In *People v. Robinson* three cases were consolidated on appeal. The court there concluded that one defendant had waived any possible conflict of interest on the part of his counsel, that a conflict of interest existed as to one defendant which was alleviated by the severance of defendants' trials, and that no prejudice resulted from joint representation of the third defendant. The court in *People v. Robinson* further concluded that the decisions of the United States and Illinois Supreme Courts (citing *Glasser, Holloway, Berland* and *Vriner*, among others) furnish guidance adequate to avoid conflicts of interests which will impede the furnishing of effective assistance of counsel.

In *People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199, our supreme court reaffirmed that it had rejected the notion that a public defender's office is to be treated as a law firm or an entity in considering a conflict of interest claim and that in a given situation, where one assistant may not effectively represent two competing interests, two assistants might be able to do so. The court then went on to conclude that Miller's defense counsel's vigorous representation belied a claim of ineffective assistance of counsel.

In the instant case, the defendant contends that his pretrial motion for severance may be said to have alerted the court that a possible conflict of interest existed; however, we note that defendant did not expressly raise the objection of ineffective assistance of counsel at trial or in his post-trial motion, and nothing in the motion for severance or the arguments thereon indicated the existence of a conflict. Therefore, defendant has waived any error resulting from the failure of the trial court to appoint private counsel. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Robinson*.

We are not unmindful of the fact that we held in *People v. Nichols* (1979), 70 Ill. App. 3d 748, 388 N.E.2d 984, codefendant's appeal, that sufficient information was presented in the pretrial motion for severance to apprise the court that a conflict existed as to defendant, Nichols. Defendant's denial of guilt by accusing Nichols and a companion of the murder and denying his presence at the time of the offense would adversely affect the presentation of Nichols' defense. With respect to this defendant, however, there was no indication that Nichols' insanity defense would adversely affect defendant's right to effective assistance of counsel. In fact, from the presentation of defendant's intended defense to the court, it appeared that he was receiving the undivided loyalty of counsel at the expense of his co-defendant, Nichols. An examination of

the record discloses that the public defender appointed to represent defendant conducted a vigorous defense. It is apparent, therefore, as in *People v. Miller*, that such vigorous representation by defense counsel belies a claim of ineffective assistance of counsel and that defendant was not entitled to the appointment of separate counsel.

It cannot be said that defendant has demonstrated an actual conflict manifested during the trial. At trial, the State introduced evidence revealing that Nichols' fingerprints were found at the home of the deceased; however, no fingerprints of defendant were found there. The State introduced the statements of defendant and Nichols, and defendant testified, maintaining that he had not killed anyone and that the statement he had given to the police was involuntary. Nichols did not testify; however, he presented an insanity defense in form of the testimony of Dr. Gilpin, a psychiatrist, Michael McDermott, a psychologist and Scotia Calhoun, a school psychologist. Defendant's attorney did not cross-examine any of these witnesses. Dr. Goldsborough, a psychiatrist at the Chester Mental Health Center, who testified for the State on rebuttal on the issue of Nichols' insanity, was cross-examined by defendant's attorney and asked whether Nichols had a tendency to project blame onto others for his actions. The doctor gave an ambiguous reply to this question.

In closing argument, attorney for defendant repeatedly argued that all of the physical evidence pointed to Nichols; that Nichols had a tendency to project blame onto others and that defendant's statement was involuntary. Nichols, in his closing argument, did not mention defendant's participation in the crime. Therefore, we conclude that an actual conflict of interest was not manifested at the trial.

Defendant also argues that Nichols' statement implicating defendant, coupled with Nichols' failure to testify, was inconsistent with and prejudicial to defendant's defense of nonparticipation and demonstrative of the conflict of interests at trial. Nichols' statement, as will be discussed subsequently, was properly admitted evidence even though it may have been prejudicial to defendant. Moreover, defendant's statement in which he admitted committing the offense was introduced at trial. Nichols' statement was corroborative of defendant's statement. As discussed above, it was clear both before and during trial that defendant was maintaining that Nichols and someone other than defendant committed the offense. This defense was in contradiction of his own statement to the police; consequently, it is apparent that Nichols' statement was no more prejudicial to or inconsistent with the defense interposed by defendant than his own statement.

It was brought to the attention of the court at the motion for severance and borne out at trial that defendant's defense would be conducted at the expense of Nichols' defense. As we stated in our opinion

relating to the appeal of co-defendant, Nichols, "[T]his was nothing less than an attempt to 'sell off' one client, the defendant [Nichols], in order to save Williams." (*People v. Nichols* (1979), 70 Ill. App. 3d 748, 752, 388 N.E.2d 984, 987.) If such be the case, it cannot be said that any attempt was made to sell off this defendant in order to save Nichols. We therefore conclude that defendant was not denied effective assistance of counsel, nor was there an actual conflict manifested at trial. *People v. Miller; People v. Robinson; People v. Vriner; People v. Berland; Holloway v. Arkansas.*

Defendant secondly contends that the trial court's refusal to grant the motion for severance denied him his right to confrontation and a fair trial.

Defendant argues that the introduction of Nichols' statement without Nichols testifying violated his sixth amendment right to confrontation as delineated in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

In *Bruton*, the Supreme Court held that the introduction of a co-defendant's statement implicating defendant when co-defendant did not testify violated defendant's right to confrontation despite limiting instructions that co-defendant's statement was to be used only as evidence against the maker of the statement. Subsequent to *Bruton*, our supreme court in *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136, held that when a defendant has made an inculpatory statement which is similar to the statement made by his co-defendant and both statements are admitted into evidence, the admission of co-defendant's statement does not violate defendant's right to confrontation, particularly where there is strong independent evidence of defendant's guilt.

In *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, the United States Supreme Court acknowledged that a conflict existed among the various courts as to whether there was a *Bruton* violation in situations such as the one in question and cited *Rosochacki* as an example of the disparate State views. In that case, in which five co-defendants were jointly tried for murder, the prosecution's case was based primarily on the defendants' oral statements to the police. These statements were found by the trial court to have been given voluntarily and were admitted into evidence. Defendants argued that the introduction of their co-defendants' inculpatory statements constituted a *Bruton* violation. In finding that there was no error in admitting the statements into evidence, the court stated:

> "When, as in *Bruton*, the confessing codefendant has chosen not to take the stand and the implicated defendant has made no extrajudicial admission of guilt, limiting instructions cannot be accepted as adequate to safeguard the defendant's rights under the Confrontation Clause. Under such circumstances, the 'practical

and human limitations of the jury system,' *Bruton v. United States, supra,* at 135, override the theoretically sound premise that a jury will follow the trial court's instructions. But when the defendant's own confession is properly before the jury, we believe that the constitutional scales tip the other way. The possible prejudice resulting from the failure of the jury to follow the trial court's instructions is not so 'devastating' or 'vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions. We therefore hold that admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." *Parker v. Randolph* (1979), 442 U.S. 62, 74, 60 L. Ed. 2d 713, 724-25, 99 S. Ct. 2132, 2140.

 We find *Parker v. Randolph* applicable to the case at bar. Here, as there, defendant and co-defendant had made similar inculpatory statements to the police concerning the crime. The trial court determined at the suppression hearing that the statements were made voluntarily and properly admissible into evidence. Both statements were admitted into evidence at trial although defendant maintained at trial that his statements were not voluntarily given. The trial court instructed the jury that the statements could not be considered against a defendant other than the one who made it. In light of the applicability of *Parker v. Randolph* to the instant case, we conclude that it was not error to admit Nichols' statement at defendant's trial.

Defendant further argues that the introduction of Nichols' statement was so prejudicial as to deny him a fair trial and therefore his motion for severance should have been granted. We cannot say that defendant was unfairly prejudiced by admission of Nichols' statement. Defendant's own statement was substantially similar and was before the jury, as it would have been if he had been tried separately. Nichols' statement corroborated defendant's statement. As our supreme court noted in *Rosochacki,* "There can be no doubt that the jury placed far greater emphasis on Rosochacki's self-incriminating admissions than on the hearsay statements of his co-defendant." (*People v. Rosochacki* (1969), 41 Ill. 2d 483, 494, 244 N.E.2d 136, 142.) Therefore, we conclude defendant was denied neither his right to confrontation nor his right to a fair trial.

Defendant next contends that the trial court abused its discretion in refusing to grant defendant's motion for mistrial when a hearsay statement was introduced by a State's witness.

The hearsay statement which defendant urges required the granting of his motion was elicited on direct examination of Officer Cox, the police dispatcher on duty when the crime was reported. The State, attempting

to show how the police received knowledge of the crime and instigated an investigation, asked the following question of Officer Cox as to a message transmitted by him, and the following reply was given:

"Q. Officer, would you answer the question, sir? What was the message you transmitted?

A. The message that I transmitted was for Charles Nine [the patrol car] to meet female subjects at 400 North 82nd Street which was two females who saw a man killed at 83 * * *."

At that point, defense counsel objected and the trial court sustained the objection. The State agreed to withdraw the question and have it stricken in its entirety. The trial court admonished the jury that the defense objection had been sustained and to disregard the witness' response.

▪ The failure to declare a mistrial constitutes grounds for reversal only when the trial court abused its discretion in refusing to declare a mistrial. (*People v. D'Argento* (1969), 106 Ill. App. 2d 36, 245 N.E.2d 501.) In this case, the trial judge promptly sustained the defense objection and properly admonished the jury to disregard the entire exchange. It should also be noted that this was an isolated statement to which no further reference was made. We find that there was no abuse of discretion here, and we further find that defendant has failed to establish that he was substantially prejudiced by the officer's response.

Finally, defendant contends that the trial court abused its discretion in not ordering a fitness hearing upon the request of counsel both during trial and prior to sentencing.

The record reveals the following sequence of events. The trial court, *sua sponte*, ordered a competency evaluation of defendant after observing his conduct during the suppression hearing. In the report submitted to the court on September 13, 1976, defendant was diagnosed as suffering from "schizophrenia, chronic undifferentiated, severe." A fitness hearing was held on November 9, 1976, at which the defendant interrupted witnesses and his testimony was rambling and incoherent. The trial court concluded that defendant was unfit to stand trial based on the testimony of Dr. Gilpin, the examining psychiatrist. On February 18, 1977, at a "restoration hearing" defendant was found fit to stand trial based on the testimony of Dr. John Goldsborough, a psychiatrist at the Chester Mental Health Center where defendant had been committed after the fitness hearing.

At the trial, defendant interjected statements during the testimony of a witness. While testifying, defendant responded to the questions asked of him, although he had difficulty in answering some questions.

The record indicates that upon three separate occasions prior to trial, defense counsel, in arguing motions for discharge based on defendant's right to a speedy trial, consistently reiterated that he had not requested a

fitness hearing and that, in his opinion, defendant understood the charges against him and was able to cooperate in his own defense.

There would be denial of due process of law inherent in trying a defendant who is not mentally fit to stand trial; therefore, a trial court is required to order an evaluation of defendant's fitness *sua sponte* whenever it becomes apparent during the proceedings that a bona fide doubt of his fitness exists. (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) The initial determination of whether a *bona fide* doubt exists as to defendant's fitness is within the discretion of the trial court, and its determination will not be overturned unless there is a clear showing of abuse of discretion. (*People v. Lewis* (1979), 75 Ill. App. 3d 560, 393 N.E.2d 1380; *People v. Willis* (1978), 64 Ill. App. 3d 737, 381 N.E.2d 799.) We do not find an abuse of discretion on the part of the trial court in the instant case.

At the outset, defendant was examined for fitness to stand trial on the *sua sponte* order of the trial court. At trial, defendant was capable of lucid responses to the questions put to him. At times, defendant was unable to answer a question as initially asked, but if the question was rephrased or defendant was pressed for an answer, he was capable of responding intelligibly. Defendant exhibited a tendency toward disruptive behavior at trial which ceased upon an admonition from the court. It is argued that defendant was incompetent to stand trial based on defendant's difficulty in answering questions and his disruptive behavior; however, prior to trial, defense counsel had insisted that defendant was competent to stand trial, despite this same type of behavior.

■■ Further, defendant previously had been determined to be fit after observation by the medical personnel at the Chester Mental Health Center for three months and after examination by Dr. Goldsborough. While a prior finding of fitness does not preclude a subsequent finding of unfitness (*People v. Felder* (1968), 101 Ill. App. 2d 333, 243 N.E.2d 350), the trial court did not rely on the prior determination of fitness in denying defendant's motion for a third fitness hearing. Rather, the trial court based its decision on its observation and assessment of defendant's conduct at trial. The trial court is in the best position to make a determination of fitness, and its determination will not be overturned unless an abuse of discretion is clearly shown. Based on defendant's ability to understand the questions and respond to them, we do not find that the trial court abused its discretion in not ordering another competency hearing.

Defendant also points to a letter written by him to defense counsel in which he stated "I would like to get out, o.k." as indicative of his inability to understand the nature of the proceedings at the time of sentencing. The letter was presented to the court at the sentencing hearing. Evincing a desire to be released from jail does not indicate that defendant is

incompetent. Moreover, fitness to be sentenced involves a more limited consideration than fitness to stand trial, since defendant's ability to assist in his defense is no longer an issue. *People v. Willis.*

■■ We find that the court did not abuse its discretion in not ordering a fitness hearing prior to sentencing.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.