397 So.2d 1224 (1981)
Marvin Max DAMON and Linda Ladler, Appellants,
v.
The STATE of Florida, Appellee.
No. 77-1981.
District Court of Appeal of Florida, Third District.
May 12, 1981.
Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellants.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
*1225 Before HENDRY, SCHWARTZ and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
On August 20, 1976, a man named Wiley Swiney was brutally murdered in his cottage in Dade County. Both the appellants Marvin Max Damon and Linda Ladler confessed to their own and the other's participation in the crime. As each described it, they engaged in a plan in which Ladler, a prostitute, lured the victim to his home. While she was occupying Swiney, Damon entered the house to take his money. When Swiney observed and then attempted to resist Damon, he began to strike the victim with a hammer and, as he stated, "I kept hitting him and kept hitting him and kept hitting him." Swiney's body was found the next day with the hammer still imbedded in his skull.
In a single two-count indictment, Damon and Ladler were charged with (1) first degree murder and (2) breaking and entering a dwelling with intent to commit robbery and making an assault in the course of that offense. After the trial judge denied Damon's pre-trial motions for severance, to suppress his confession, and to permit his attorney to comment on Ladler's projected failure to testify, the defendants went to a joint trial in Dade County circuit court. Both confessions were introduced into evidence. Damon took the stand and stated that his confession had been beaten out of him; that its contents were entirely the suggestion of the investigating officers; and, in essence, that he knew nothing about the crime.[1] He was directly contradicted by the lead detective who took the statement and heavily impeached, to say the least, by the total lack of corroboration of the physical injuries he had supposedly sustained[2] and the extreme unlikelihood that the details related in his confession could have been supplied by someone who was not there. Ladler did not testify.
Both defendants were found guilty of lesser included offenses, third degree murder as to count one, and "breaking and entering a dwelling with intent to commit petty larceny" on count two.[3] Damon was sentenced to consecutive terms of fifteen years; Ladler, to fifteen years for murder and ten concurrent years on the burglary charge. Both appeal. We affirm.

I

No Error to Deny Damon Severance
The first issue, which of course is raised only by Damon, claims error in the denial of a severance of Ladler's trial from his own. Damon is correct on neither of the grounds presented to support this contention.
(a). No Bruton Violation. Damon first claims that the joint trial resulted in the denial of his right to confrontation of Ladler as to those portions of her confession which implicated him. He invokes the familiar authority of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This reliance is misplaced. It is now well-settled that when, as in this case, there are so-called "interlocking confessions"  that is, when a defendant who makes a Bruton complaint has himself confessed, and has thus supplied the most persuasive *1226 evidence possible against him  no severance is required. This has been held to be true either because no sixth amendment violation is essentially involved at all, see Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) (plurality opinion of Rehnquist, J.) or, employing a more traditional analysis, because the nontestifying codefendant's confession is harmless error.[4]Parker v. Randolph, supra (concurring opinion of Blackmun, J.); Mack v. Maggio, 538 F.2d 1129 (5th Cir.1976); see also, Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Andrews v. State, 372 So.2d 143 (Fla.3d DCA 1979), cert. discharged, 390 So.2d 61 (Fla. 1980).
Damon's arguments that the interlocking confession rule does not apply to him lack merit. He claims that Ladler's confession portrayed him in a worse light than his own. But his statement in and of itself showed him to be guilty of first degree-felony murder.[5] The fact that Ladler's statement was predictably more exculpatory concerning immaterial details of the crime does not render its admission in any meaningful sense harmful to his case. See Felton v. Harris, 482 F. Supp. 448, 455, notes 12-13 (S.D.N.Y. 1979) (per Weinfeld, J.); People v. Williams, 84 Ill. App.3d 247, 39 Ill.Dec. 605, 405 N.E.2d 358 (1980). It is also argued that Ladler's statement impermissibly compromised Damon's attack upon his own confession. The interlocking confession doctrine, however, has full vitality even when the defendant's admissions are themselves challenged at the trial. Felton v. Harris, supra, and cases cited; People v. Williams, supra; see United States v. Webb, 633 F.2d 1140, 1142 (5th Cir.1981). Furthermore, Damon's particular claims that the statement was involuntary and wholly the result of police prompting were entirely unsubstantial; indeed, patently fabricated. It is apparent that they raised no reasonable question which could have led the jury  any more than the trial court in denying suppression  to reject the confession, even if Ladler's corroborative statement had not been admitted at all. In sum, we are convinced beyond a reasonable doubt that Damon was convicted because of "his own confession of guilt and not that of his codefendant." Felton v. Harris, supra, at 482 F. Supp. 456; Harrington v. California, supra. Hence, we reject his Bruton contention.
(b) No de Luna Violation. Relying on the line of cases exemplified by de Luna v. United States, 308 F.2d 140 (5th Cir.1962), which we followed in Sublette v. State, 365 So.2d 775 (Fla.3d DCA 1978), cert. dismissed, 378 So.2d 349 (Fla. 1979), Damon also urges that the joint trial and the lower court's specific pre-emptive instruction erroneously prevented him from commenting upon Ladler's failure to testify. Again, we find no impairment of his substantial rights. As was noted in Gilmour v. State, 358 So.2d 63, 65 (Fla.3d DCA 1978), de Luna and its progeny apply only
when the arguments or defenses of jointly tried defendants are antagonistic, such as here where the arguments and theory of defense for one who did not testify amounted to an attempt to shunt the guilt to the other... .
In such a situation, it may well be harmful error to preclude the testifying defendant's attorney from commenting upon the implications to be drawn from the fact that his adverse codefendant did not support his antagonism under oath. But that is not this case. Ladler and her lawyer did not, as in de Luna and Sublette, attempt to escape or diminish her own responsibility by claiming that Damon was alone responsible for the crime. In truth, it is difficult to determine just what her defense was, beyond her apparently successful plea for a jury pardon. In any case, since the positions of the codefendants were entirely consistent, there was *1227 in essence no imaginable argument which Damon's lawyer could usefully or helpfully have made concerning her non-appearance;[6] no constitutional requirement, therefore, that he be permitted to make it; and manifestly no harm in refusing him the right to do so. As in each case which does not involve conflicting theories of defense, we hold that error has not been demonstrated on this point. Gurleski v. United States, 405 F.2d 253, 264-65 (5th Cir.1968); Hayes v. United States, 329 F.2d 209 (8th Cir.1964), cert. denied, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964); United States v. Nakaladski, 481 F.2d 289, 301-02 (5th Cir.1973); United States v. Enten, 332 F. Supp. 249 (D.D.C. 1971).

II

Burglary Convictions Proper
The only claim common to both appellants which requires discussion[7] is the assertion that, since the murder and the burglary convictions arose from the same criminal conduct, State v. Pinder, 375 So.2d 836 (Fla. 1979) requires that the latter be set aside. See also, Mahaun v. State, 377 So.2d 1158 (Fla. 1979). Again, we disagree.
At bottom, Pinder represents an acceptance of the argument that, as indicated in Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the rule of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which, on double jeopardy grounds, precludes successive prosecutions for "the same offense," applies to multiple charges in a single trial. At 284 U.S. 304, 52 S.Ct. at 182, 76 L.Ed. at 309, Blockburger articulates the formula which governs the question of when such an improperly duplicative conviction has been secured:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.
Accord, e.g., Albernaz v. United States, ___ U.S. ___, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); Brown v. Ohio, supra; Iannelli v. United States, 420 U.S. 770, 785, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975); Gore v. United States, 357 U.S. 386, 389, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1958). In both Pinder and Mahaun, the court held that the defendant could not be punished both for an underlying felony  robbery in Pinder and aggravated child abuse in Mahaun  and for first or third degree murder arising from a death caused during the commission of that same felony. In each instance, under the Blockburger test the felony charge fell because it was encompassed in and did not require proof of any fact which was not also required to establish the elements of the felony-murder.[8] We need not *1228 here discuss the present status of the Pinder doctrine,[9] nor certify the issue as we did in Monroe v. State, 396 So.2d 241 (Fla.3d DCA 1981). This is because Pinder, even if still viable, does not apply to this case. Unlike Pinder and Mahaun, the defendants here were not convicted of murder in the degree statutorily appropriate to the felony of which they also were found guilty. To the contrary, those crimes are entirely and mutually inconsistent. In fact, under Section 782.04(4), Fla. Stat. (1975), third degree murder is specifically defined, in part, as one which was effected in the commission of "any felony other than ... burglary." (Burglary involves either first or second degree felony murder under 782.04(1)(a) and (3).) Reverting to the Blockburger analysis, then, it is apparent that the statutory definitions of each of the two offenses involves elements which are not common to the other; the third degree murder charge requires a killing, which the burglary does not, and, by definition, cannot encompass the elements which make up the latter charge. However illogical and inconsistent the verdicts, which resulted from the unique Florida combination of the mandatory-lesser-included-offense and the jury-pardon doctrines,[10] we think it clear  and *1229 we have found no contrary authority  that Pinder does not apply to such a situation and that the mere fact that the two crimes arose from the same general course of conduct does not preclude punishment for both of them. See also, Borges v. State, 394 So.2d 1046 (Fla. 4th DCA 1981). The adoption of the appellants' position on this point would mean that the boon granted them through confusion or pity by their acquittal of the higher murder offenses, of which they were plainly guilty, would result in their exoneration, directly contrary to the jury's findings, of another serious offense which they also committed. We can accept no such conclusion.
Affirmed.
NOTES
[1] Ladler did not similarly challenge her confession at trial.
[2] Among other things, a photograph taken when he was booked into jail immediately after the confession showed no signs of damage.
[3] The appellants both claim that the trial court misleadingly instructed the jury that this charge  obviously the crime of burglary of a dwelling under Section 810.02(3)  was a "lesser" offense of the one charged in Count II, which the defendants characterize as breaking and entering a dwelling with intent to commit robbery. It is argued that both of these crimes are second degree felonies and that, "to reflect the jury's intent," the sentences as to count two should be reduced to the maximum for a third degree felony, five years. We reject this claim because, as the indictment charges, and the jury was specifically instructed, a verdict of "guilty as charged" in Count II required a finding of an assault during the burglary. Since this crime carries a possible life sentence under Section 810.02(2)(a), the crime of which the jury found the defendants guilty is indeed a lesser offense. See, Tucker v. State, 388 So.2d 6 (Fla.3d DCA 1980).
[4] Assuming the difference is anything more than semantic, we find no reason in this case to choose between these two theoretical bases of decision.
[5] His conviction of third-degree murder can only be ascribed either to a misunderstanding of the felony-murder instructions or to a jury pardon.
[6] This is demonstrated by the fact that Damon's trial counsel did not suggest below and his appellate lawyer could not articulate at oral argument anything which could persuasively have been argued on his behalf concerning Ladler's silence during the trial.

He does point to the circumstance that, since he testified, Ladler's attorney could and did attack his credibility. We have examined this portion of Ladler's summation and find, to the very limited extent that it is even comprehensible, that it could not have assisted Ladler's cause in the slightest. There was surely no harmful error, requiring a new trial, in the court's refusal to permit Damon to make a reciprocally meaningless comment.
[7] Their argument that the references in Damon's confession to prior instances in which they had employed the same scheme as the one involved in this case constituted a violation of the rule of Williams v. State, 110 So.2d 654 (Fla. 1959) is without substance. Ashley v. State, 265 So.2d 685 (Fla. 1972); Hamilton v. State, 356 So.2d 30 (Fla.3d DCA 1978), cert. denied, 364 So.2d 885 (Fla. 1978).
[8] The same is true of the subsequent cases which have followed Pinder. E.g., Williams v. State, 397 So.2d 438 (Fla. 3d DCA 1981) (attempted robbery with a firearm-possession of a firearm during commission of a felony); Thompson v. State, 397 So.2d 354 (Fla. 3d DCA 1981) (first degree felony murder-robbery); Monroe v. State, 396 So.2d 241 (Fla. 3d DCA 1981) (robbery with a firearm-display of a firearm in commission of a felony); Cantrell v. State (Fla. 1st DCA, Case no. PP-92, opinion filed, Feburary 11, 1981) (burglary-possession of burglary tools); Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981) (first degree felony murder-second degree murder, aggravated battery, robbery); Watson v. State, 392 So.2d 60 (Fla. 5th DCA 1981) (first degree felony murder-armed robbery); Barner v. State, 390 So.2d 468 (Fla. 3d DCA 1980) (robbery with a firearm-possession of a firearm during commission of a felony); Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980) (second degree felony murder-sexual battery); Harper v. State, 386 So.2d 808 (Fla. 1st DCA 1980) (enhancement of third-degree murder sentence due to use of firearm-aggravated assault); Hegstrom v. State, 388 So.2d 1308 (Fla.3d DCA 1980) (first degree felony murder-robbery); Hillery v. State, 391 So.2d 776 (Fla. 4th DCA 1980) (first degree felony murder-robbery); Jenrette v. State, 390 So.2d 781 (Fla.3d DCA 1980) (aggravated battery committed with a firearm-possession of a firearm during commission of a felony); McRae v. State, 383 So.2d 289 (Fla.2d DCA 1980) (first-degree felony burglary-sexual battery); State v. Kirkland, 384 So.2d 1328 (Fla.3d DCA 1980) (first degree felony murder-robbery); Taylor v. State, 386 So.2d 825 (Fla.3d DCA 1980) (first degree felony murder-robbery); Wright v. State, 380 So.2d 550 (Fla.2d DCA 1980) (second degree felony murder-robbery).
[9] The later-decided United States Supreme Court cases of Albernaz v. United States, supra, and Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) have cast considerable doubt upon Pinder's constitutional underpinning. See, Delaware v. Hunter, 450 U.S. ___, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981); Delaware v. Evans, 450 U.S. ___, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981); and Missouri v. Counselman, 450 U.S. ___, 101 S.Ct. 1690, 68 L.Ed.2d 190 (1981) (vacating Pinder-like state decisions for further consideration in light of Albernaz.)
[10] The defendants specifically do not rely on the result in Mahaun v. State, supra, at 377 So.2d 1161, in which, in considering the reverse situation of the one before us, the supreme court held that an acquittal of the underlying felony "effectively holds [the defendant] innocent" of a felony murder charge. The Mahaun case is characterized by the defendants as involving a "legal" inconsistency between the verdicts, rather than, as here, a mere "logical" inconsistency about which they cannot and do not complain. McCloud v. State, 335 So.2d 257 (Fla. 1976). While we are not sure that we entirely grasp the distinction  or why it should be one  this candid concession makes it unnecessary for us to consider Mahaun's effect upon, and interplay with long-established Florida notions concerning lesser included offenses which must be instructed upon even though they are factually unsupported, jury pardons, and the jury's right to return inconsistent verdicts as reflected by Standard Jury Instruction 2.16:

A separate crime is charged in each count of the information (indictment). Each crime, and the evidence applicable to it, must be considered separately. The fact that you may find the defendant guilty, or not guilty, of one (or more) of the crimes charged must not affect your verdict with respect to the (any other) crime charged.
The holding in Mahaun, which itself contains no supporting analysis or citation of authority, will likely be explained on these points by the supreme court's opinion in Redondo v. State, 380 So.2d 1107 (Fla.3d DCA 1980), which is now pending before it in Case no. 59,032 on petition for review granted. See, generally, Perkins, Dealing with the Inconsistent Verdict, 15 Criminal Law Bulletin 405 (1979), in which Professor Perkins reaches the following conclusion.
[I]f the jury decides upon a partial `pardon' and returns a verdict of guilty on one count and not guilty on another, it is certainly unwise to have a procedure which requires the judge to enter verdicts of acquittal on both counts if the verdict is found to be inconsistent.
The jury's mercy-dispensing power  or power of lenity, to use Hand's term  necessarily includes the power to return an inconsistent verdict. Let it stand.