## STATE OF FLORIDA v RIFE

### Case No. 09782,3 IB

County Court, Dade County, Florida

October 7, 1987

### APPEARANCES OF COUNSEL

Fred Maldovan, Assistant State Attorney, for plaintiff.

Pat Nally, Essen & Essen, for defendant.

### OPINION OF THE COURT

STEVE LEVINE, County Judge.

Defendant was charged with driving under the influence of alcohol

in violation of Florida Statutes, Section 316.193. After trial, the jury found the Defendant not guilty of driving under the influence to the extent that her normal faculties were impaired, Florida Statutes, Section 316.193(a)(a). The jury did find her guilty, however, of driving under the influence by driving with a blood alcohol level of 0.10 percent or higher, Florida Statutes, Section 316.193(1)(b). The case is presently before the Court upon the Defendant's Motion for New Trial. The Defendant asserts that this Court erred in two respects: (1) by denying the Defendant's request for mistrial after an alleged violation of the Defendant's right to remain silent and her right to be presumed innocent, with the burden of proof on the state, and (2) by incorrectly instructing the jury on Florida law pertaining to unlawful blood alcohol, given the evidence presented by the prosecution. The Court will address each argument in turn.

## I. THERE WAS NO IMPERMISSIBLE COMMENT ON THE ACCUSED'S RIGHT TO REMAIN SILENT OR TO BE PRESUMED INNOCENT

The state presented testimony from an individual named Eli Gonzalez relating to three breath samples taken from the Defendant. In response to a question from the state, Gonzalez testified that he analyzed two samples, but retained the third sample in the event the defense wished to have it tested. It was clear that this was standard procedure, not peculiar to the Defendant's case. Gonzalez made no specific comment with regard to whether the defense ever did in fact test the third sample. The defense objected and requested a mistrial.

The defense asserts that the statement by Gonzalez was a comment on the silence of the Defendant and infringed on her right to be presumed innocent, with the burden of proof on the prosecution. The defense claims that this would appear as a challenge to the defense which, if not accepted, would amount to a concession that the defendant was guilty. In other words, her silence by not presenting defense evidence of a test on the third sample would be improperly used to convict her.

The right to remain silent and the presumption of innocence are related constitutional guarantees. *Romero v. State,* 435 So.2d 318 (Fla. 4th DCA 1983). Commenting on an accused's failure to testify or present evidence is serious error. *State v. Kinchen,* 490 So.2d 21 (Fla. 1985). Although the prohibition on such comments is usually applied to prosecutors, "it is the fact of comment rather than the source of comment that effects denial of the right to remain silent." *Danford v. State,* 492 So.2d 690 (Fla. 4th DCA 1986) (citing *Sublette v. State,* 365

So.2d 775, 778 (Fla. 3d DCA 1978)). Florida has a relatively liberal rule for determining whether a comment constitutes a comment on silence. Any statement which is "fairly susceptible" of being interpreted as a comment on silence is treated as such. *State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986). The Supreme Court of Florida has stated that "fairly" means legitimately, plainly, clearly, or distinctly, among other things. *State v. Kinchen*, supra, at 22.

The statement made by Gonzalez cannot be clearly or plainly understood as a comment on the Defendant's right to remain silent, and it does not infringe on her presumption of innocence. The statement is simply a statement of fact. An examination of the statement and the context in which it arose support the conclusion that it directed the jury's attention to the evidence, not to the Defendant or counsel. The witness was simply explaining why there were three samples of the Defendant's breath. If he did not testify as to this issue, the jury could well have been left wondering why the prosecution did not test the third sample. The statement merely permissibly commented on the evidence. *Dufour v. State*, 495 So.2d 154, 160 (Fla. 1986). *See United States v. Bynum*, 556 F.2d 914, 919 (5th Cir. 1978); *State v. Grissom*, 492 SO.2d 1324 (Fla. 1986).

Assuming arguendo that Gonzalez's statement could be interpreted as a comment on silence, it still does not require a new trial. Comments on a Defendant's silence are subject to harmless error analysis. *State v. DiGuilio*, 491 So.2d 1129 (Fla. 1986). Several factors at trial appear to be significant. First, the Court instructed the jury both in preliminary instructions and in final instructions about the burden of proof, the defendant's failure to testify, and evaluation of witness testimony. Also, after the defense objected to the comment, the Court gave a curative instruction. No questions were submitted by the jury regarding any aspect of the test samples, and substantial other evidence was presented to support the jury's verdict. The alleged error is harmless beyond a reasonable doubt. Therefore, denial of the defense request for mistrial is not reversible error.

## II. THE STATE IS NOT REQUIRED TO PRESENT EXPERT EVIDENCE RELATING THE BREATH TEST RESULT BACK TO THE TIME OF DRIVING

The defense next contends that the Court erred by incorrectly instructing the jury regarding the Florida law which prohibits driving with an unlawful blood alcohol level. More precisely, the defense complains that the Court should not have allowed the case to go to the jury because of insufficient evidence of unlawful blood alcohol level at

the time the Defendant was driving her vehicle. The Court read the jury the Standard Jury Instruction on unlawful blood alcohol, a copy of which is attached hereto and incorporated herein. Before reading the jury this instruction, the Court ruled that the state was not required to present extrapolation evidence to show the Defendant's blood alcohol level at the time of driving. The Court interpreted Florida law to mean that a defendant could be convicted of driving with an unlawful blood alcohol level when the only evidence presented was that the Defendant had been driving and, within a reasonable time after driving, had a blood alcohol level exceeding the statutory minimum. The Court adheres to this interpretation, as will be explained below. The jury instruction actually given by the Court, agreed to by both the state and defense, was more restrictive in its explanation of the law, actually requiring proof of unlawful blood alcohol at the time of driving rather than within a reasonable time after driving. Thus, although the instruction may not have correctly explained Florida law, the error clearly benefited the Defendant by requiring additional proof. Thus, the error, if any, is harmless and does not require a new trial.

The real question in this case concerns the correct interpretation of Florida Statutes, Section 316.193(1)(b). The state asserts that the law does not require proof of the actual blood alcohol level at the time the Defendant was driving, while the defense argues the opposite. The statute reads, in pertinent part, "A person is guilty of the offense of driving under the influence and is subject to punishment . . . if such person is driving or in actual physical control of a vehicle within tis state and . . . The person has a blood alcohol level of 0.10% or higher." The statute is vague in the sense that it does not, on its face, connect the time of driving with the blood alcohol level, i.e., it does not say "while" driving or use words of similar meaning and clarity. Nor is there any other statute, regulation or rule in Florida requiring such evidence or proof. The Court must now determine the meaning and application of the Florida law.

Some of the most important and widely recognized rules of construction are applicable to the case *sub judice*. "Where reasonable differences arise as to the meaning or application of a statute, the legislative intent must be the polestar of judicial interpretation." *Lowry v. Parole and Probation Commission,* 473 So.2d 1248 (Fla. 1985). The Court must give effect to the legislative intent, even if the result contradicts the strict letter of the statute or other rules of construction. *Vildibill v. Johnson,* 492 So.2d 1047 (Fla. 1986); *Beebe v. Richardson,* 23 So.2d 718 (Fla. 1945). "Where the wording of a statute taken literally conflicts with the plain legislative intent, the wording must yield to the

**67**

legislative purpose." *State v. Greco,* 479 So.2d 786 (Fla. 2d DCA 1985). Although there is a rule of construction that requires criminal statutes to be strictly construed in favor of the accused, the primary and overriding consideration is legislative intent. *Valdes v. State,* 443 So.2d 221 (Fla. 1st DCA 1983); *Martin v. State,* 367 So.2d 1119 (Fla. 1st DCA 1979); *State v. Nunez,* 368 So.2d 422 (Fla. 3d DCA 1979). "In other words, criminal statutes are not to be so strictly construed as to emasculate the statute and defeat the obvious intention of the legislature. . . . In addition, statutes must be construed so as to avoid absurd results." *Nunez, supra,* at 422-3. Legislative intent can be determined by examining the words of the statute, the subject addressed by the statute, the purpose to be accomplished, and the means adopted to achieve the desired results. *Beebe supra,* at 719. The defense suggests that the jury instructions provide the definitive or controlling interpretation of Florida law. The Standard Jury Instructions are not conclusive, however, and the responsibility for correctly interpreting the law remains with the trial judge. *See Yohn v. State,* 476 So.2d 123 (Fla. 1985).

The Supreme Court of New Jersey recently addressed virtually the same issued presented here, applying similar rules of statutory construction. *State v. Tischio,* 527 A.2d 388 (N.J. 1987). The New Jersey statute provides, in relevant part, "[a] person who . . . operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood . . . shall be subject [to penalties]." N.J.S.A. 39:4-50(a). Although arguably clearer than the Florida statute, the New Jersey court found its law similarly vague.

> Although the statute does not refer to the time of testing, it is obvious that a breathalyzer test cannot be administered while a defendant is driving his motor vehicle. . . . This raises at least two possible interpretations of the statutory offense. One is that a .10% blood-alcohol level determined by a breathalyzer test made within a reasonable time of defendant's operation alone satisfies the statute. The other is that some evidentiary process—not discernible on the face of the statute—must be invoked to relate breathalyzer test results to the time when the defendant was actually driving. The question is which interpretation comports with the true meaning of the statute. *Tischio, supra,* at 392.

The New Jersey Supreme Court then proceeded to analyze the legislative intent behind the statute. The primary purpose of the law, according to the Court, is to "curb the senseless havoc and destruction caused by intoxicated drivers." *Id.* The Court emphasized the great number of alcohol related accidents and fatalities, and the recognized

68

needs to take serious action to reduce or eliminate the number of persons who think it acceptable to drink and drive. *Id.* Of course, this is the same situation in Florida. *State v. Hoch,* 500 So.2d 597 (Fla. 3d DCA 1986). An examination of the overall scheme of both Florida's and New Jersey's drunk-driving laws "reflects the dominant legislative purpose to eliminate intoxicated drivers from the roadways. . . ." *Tischio, supra,* at 393. *See Hoch, supra* at 601.

The New Jersey court also observed that their unlawful blood alcohol level statute, N.J.S.A. 39:4-50(a), clearly expresses a legislative intent to rely exclusively on breath test results whenever possible. *Tischio, supra,* at 394. The determination of blood alcohol levels through breath tests is the "lynch-pin" of the drunk-driving statutes. *Id.* at 391. Consideration of Florida's laws and regulations lead one to the same conclusion. *See e.g., State v. Hoch,* 500 So.2d 597 (Fla. 3d DCA 1986); Florida Statutes, Sections 316.1932 (implied consent law), 316.1934 (presumptions of impairment law).

The point of such legislation is to stop drivers from drinking a quantity of alcohol that could, at any time they are behind the wheel, given them a blood alcohol level of .10% or higher. People can drink that quantity of alcohol, but they are then prohibited from driving, regardless of actual impairment. The essence of the crime is operation of a motor vehicle after drinking enough to produce the reading condemned by the statute, if the test is given a reasonable time after the defendant was apprehended driving. Otherwise, people could drink a large quantity of alcohol, get in their cars, and become "moving time bombs." *Tischio* at 396. "The law was not intended to encourage a perilous race to reach one's destination, whether it be home or the next bar, before the blood alcohol concentration reaches the prohibited level." *Id.* Such an interpretation would lead to absurd and dangerous results.

Based on the foregoing considerations, the Supreme Court of New Jersey held that the offense prescribed by N.J.S.A. 39:4-50(a) is proved simply by admission of a breathalyzer test result of .10% blood alcohol level or higher, when the test is administered a reasonable time after a defendant is legally stopped by police, without the need for extrapolation or relation-back testimony. *Tischio, supra,* 389-397. This Court believes that Florida Statutes, Section 316.193(1)(b), must be interpreted in the same manner, based on the similar wording of the statutes, the legislative purposes in enacting the law, the overall statutory and regulatory scheme pertaining to the subject matter, and the strong public policy concerns.

The defense urges that the Court adopt the holding of *State v.*

69

*Dumont,* 499 A.2d 787 (Vt. 1985), that the prosecution must produce evidence of the defendant's blood alcohol content, and must relate that content back to the time of the operation of the automobile. *Id.* at 789. The holding was based on 23 V.S.A. 1201(a)92), which states, in relevant part, "[a] person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway WHILE . . . there is .10% or more by weight of alcohol in his blood, as shown by an analysis of his breath or blood. . . ." (emphasis added). The wording of the Vermont statute is obviously different than either the law of Florida or New Jersey. Therefore, the decision of the Vermont Court cannot and should not be controlling here.

Further, all other states interpreting unlawful blood alcohol level statutes even remotely similar to Vermont's have concluded that the test results are admissible. Most of these jurisdictions have ruled that the remoteness of the tests goes to its weight, not its admissibility. These states indicate that extrapolation evidence is not required. The test itself, combined with other evidence of the defendant's deportment, is circumstantial evidence of guilt sufficient to sustain a conviction. *E.g., Feunning v. Super. Ct. In & For Cty. of Maricopa,* 680 P.2d 121 (Ariz. 1983); *Simon v. State,* 355 S.E.2d 120 (Ga.App. 1987); *State v. Knoll,* 718 P.2d 589 (Idaho App. 1986); *People v. Mertz,* 497 N.E.2d 657 (N.Y. 1986); *Commonwealth v. Speights,* 509 A.2d 1263 (Pa. Super. 1986); *State v. Keller,* 672 P.2d 412 (Wash.App. 1983). Even two Florida courts have adopted this approach, although the decisions appear to have been decided before the persuasive New Jersey decision in *Tischio, supra. State v. Townsend,* TT84-3211-Xx, Appeal Case No. N-18 (Circuit Court, Polk County, 11/17/86); *State v. Halm,* 10 Fla.Supp.2d 23 (Monroe County Court, 1985). Still other states have statutes that make a breath test given a certain time after driving a rebuttable presumption or inference of unlawful blood alcohol at the time of driving. Again, the state is not required to present evidence of extrapolation in such jurisdictions. *Erickson v. Municipality of Anchorage,* 662P.2d 963 (Alaska App. 1983); Cal. Code Ann. 23151 (Rules of the Road). Some states have statutes that define the actual offense as being the unlawful blood alcohol as reflected by a breath test given within a certain period after driving/arrest. Again, extrapolation is unnecessary. *E.g., State v. Kimball,* 361 N.W.2d 601 (N.D. 1985); *State v. Ulrich,* 478 N.E.2d 812 (Ohio App. 1984); *Schumaker v. State,* 704 S.W.2d 548 (Tex. App. 13 Dist. 1986); Minn. Stat. Ann. (Highway Safety Regulation) 169.121. In the context of impairment, most states have also held that extrapolation is not required for the breath test result to be considered by the trier-of-fact. *E.g., Slaughter v. State,* 322

A.2d 15 (Del. 1974); *State v. Sutliff,* 548 P.2d 1128 (Idaho 1976); *Pollard v. State,* 439 N.E.2d 177 (Ind.App. 1982); *State v. Parson,* 601 P.2d 680 (Kan. 1979); *State v. Wright,* 509 A.2d 1253 (N.H. 1986). In the research conducted by the Court, and in all the information provided by the parties, Vermont stood alone in requiring expert evidence of extrapolation to sustain a conviction.

Accordingly, this Court finds that a violation of Florida Statutes, Section 316.193(1)(b), is established where the only evidence presented by the state is that the defendant was driving and, within a reasonable period after driving, had a blood alcohol level of 0.10% or higher as determined by administration of a breathalyzer test. The evidence in the case *sub judice* was more than sufficient to sustain the jury's verdict. The fact that the Standard Jury Instruction did not correctly state the law in Florida does not require a new trial because the error worked to the Defendant's benefit by requiring more proof than actually necessary. If the Court were to apply the rules in the majority of other states, there would be sufficient evidence to sustain the verdict, since the test result combined with other evidence of the Defendant's deportment at the time of her detention and arrest constitutes sufficient circumstantial evidence of guilt.

WHEREFORE, the Defendant's Motion for New Trial is respectfully DENIED.

DONE and ORDERED in Miami, Dade County, Florida, this 7th day of October, 1987.