(No. 36497—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in
Error, *v.* EARNEST BROWN, Plaintiff in Error.

*Opinion filed September 29, 1964.*

Shayle P. Fox and Floyd H. Abramson, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Paul A. O'Malley, Assistant State's Attorneys, of counsel.) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

In 1951, the grand jury of the criminal court of Cook County returned three indictments against defendant, Earnest Brown, charging him with two separate crimes of murder and one crime of rape. He pleaded guilty to all of the indictments and was sentenced to the penitentiary for concurrent terms of 199 years on each indictment. We have issued a writ of error to review the judgments of conviction.

The record shows that prior to the defendant's pleas of guilty two sanity hearings were held. In the first hearing the judge directed the jury to return a verdict finding the defendant sane, but three jurors refused to return such a verdict. A mistrial was declared and a second sanity hearing was conducted. The judge again directed the jury to return a verdict finding the defendant sane and such a verdict was returned by the jury. The defendant contends that his appointed counsel did not faithfully and competently represent him at the sanity hearings. It is urged that as a result of the lack of effective representation by counsel, incompetent evidence was admitted without objection and that the proceedings were irregular in other respects to such a degree as to deprive the defendant of due process of law.

In passing upon these contentions we have considered the entire proceedings in the record, including both sanity hearings and the proceedings at the time of the defendant's pleas of guilty. The sanity hearing was held at the request of the defendant's appointed counsel, who filed a petition alleging that the defendant had previously been committed to the Dixon State Hospital and reciting that the defendant had been examined by the Behavior Clinic of the criminal court and that the Clinic was of the opinion that the defendant was malingering and that he could co-operate with his counsel if he chose to do so. At the first hearing, the prosecutor, in a preliminary statement to the jury, stated without objection by defense counsel that both he and the defendant's attorney were of the opinion that the defendant was not insane. The only witness was Dr. William Haines, the Director of the Behavior Clinic. He testified that the defendant's social history revealed that he had been a patient at the Dixon State Hospital and had escaped from the hospital on several occasions; that the defendant had been a patient in a State hospital in the State of Florida but that he was not in that hospital as a mental patient; and that the defendant had been tried by a jury in the State of New York subsequent to his escape from the Dixon Hospital and found to be not feebleminded. The information as to the New York proceeding was contained in a letter to the doctor from the Dixon hospital. The doctor went on to testify that no mental examination was made and that he attempted to make a psychological examination but the defendant refused to co-operate and would not answer the doctor's questions. He stated that, based on his knowledge of the defendant's background and the information he had obtained from other institutions, and from observation of the defendant in the county jail, he was of the opinion that the defendant was sane, and that he knew the nature of the charges against him and was able to co-operate with his counsel. The court asked the doctor the basis for his opin-

ion, and the doctor replied that his opinion was based upon the observations of the defendant in the jail. In reply to an inquiry by the court, the witness replied that his opinion was based upon a degree of medical certainty. The court then directed the jury to return a verdict finding the defendant sane, but three jurors refused to sign the verdict. A new jury was sworn and Dr. Haines testified in substantially the same manner as in the first hearing. No comment was made in opening statements regarding the opinion of either attorney as to defendant's sanity. The court again directed the jury to return a verdict finding the defendant sane and such a verdict was returned.

Several acts and omissions on the part of the defendant's appointed counsel are relied upon to establish the allegation that the attorney was unfaithful and incompetent Before considering these allegations in detail, we believe it appropriate to comment on the theory underlying the defendant's present attack on his trial counsel. Although not expressly stated in the defendant's brief, it is evident that the defendant contends that it was the duty of his trial counsel to exert maximum effort to obtain a jury verdict finding that the defendant was insane. No such duty exists An attorney charged with the defense of an accused person should bring to the court's attention any facts raising a *bona fide* doubt as to the accused's competency to stand trial. (*People* v. *Cleggett,* 22 Ill.2d 471.) A judicial inquiry should then be held to resolve the question. In such an inquiry counsel for the defense is no more obligated to attempt to obtain a verdict of insanity than he is to obtain a verdict of sanity. His only obligation is to take all proper steps to insure a fair determination of the issue. With these observations in mind we proceed to a consideration of the detailed charges of incompetency.

It is first alleged that the attorney violated his duty toward the plaintiff by alleging in the petition for a sanity hearing that the Behavior Clinic was of the opinion that

the defendant was malingering and could co-operate with counsel. In our opinion this allegation does not support the charge that the defendant did not receive the effective assistance of counsel. It was the obligation of the attorney to place before the court the question of the defendant's sanity, but he was under no obligation to conceal pertinent facts or misrepresent the facts to the court.

It is next contended that the attorney should have objected to the prosecutor's statement to the jury at the first hearing that both the prosecution and the defense were of the opinion that the defendant was sane. The first hearing resulted in a mistrial, and no such statement was made at the second hearing. We therefore find that the failure to object to the improper statement at the first hearing does not require reversal.

It is also argued that the fact that counsel called Dr. Haines as a witness, knowing that the doctor would testify that the defendant was sane, establishes that the attorney was incompetent. Dr. Haines was the only doctor who had examined the defendant and was in the best position to express an opinion as to the defendant's mental condition.

It is contended that defense counsel was negligent in failing to object to the testimony of Dr. Haines that he had received information from the Dixon State Hospital to the effect that the defendant had been found not feebleminded by a jury in New York. We agree that the testimony was improper since it was clearly hearsay. However, the fact that an appointed attorney fails to object to improper testimony does not necessarily establish that the attorney was incompetent and is insufficient to require a reversal of the judgment of conviction. *Cf. People* v. *Heirens,* 4 Ill.2d 131, 144.

The contention is made that an objection should have been made to the doctor's testimony that in his opinion the defendant was sane, on the ground that an insufficient foundation had been laid for this opinion testimony. It is

contended that the opinion could not properly be based upon the report from Dixon and that since the defendant had refused to co-operate in a psychological examination there was no competent evidence to support the doctor's opinion. As to defendant's refusal to co-operate in a psychological examination, we do not believe that such refusal can defeat a determination of defendant's sanity. To hold otherwise would bar any determination of the issue. We are of the opinion that, disregarding the improper hearsay testimony, and taking into consideration the fact that the defendant refused to co-operate in the psychological examination, there was still a basis for the doctor's opinion. He testified that he was a member of the American Board of Psychiatry and on the staff of several hospitals in addition to being the Director of the Behavior Clinic. He testified that as Director he had examined several thousand patients. His qualifications and experience and his observation of the defendant were sufficient to form a basis for the opinion that the defendant understood the nature of the charges against him and was able to co-operate with counsel.

Finally, it is urged that the direction of a verdict of sanity was improper and that counsel should have objected to the direction of the verdict. We have recognized that in proper cases a verdict of sanity might be directed. (*People* v. *Reeves,* 412 Ill. 555, 560.) In the recent case of *People* v. *Woods,* 26 Ill.2d 557, we approved the direction of a verdict of sanity under conditions similar to those in the present case. In that case Dr. Haines was also the only witness to testify and he stated that he had a medical history regarding the defendant which showed that he had been in a mental institution and had escaped. He testified that he had examined the defendant and was of the opinion that he could understand the nature of the charge against him and could co-operate with his counsel. In the present case, as in the *Woods* case, the only evidence tending to establish that

the defendant was not competent to stand trial was the fact that he had been committed to the Dixon State Hospital as a feeble-minded person about eight years prior to the time of the sanity hearing. As we pointed out in *Woods,* such a commitment, several years prior to the hearing, does not necessarily even establish a *bona fide* doubt as to the defendant's sanity. The only relevant factors in determining whether a defendant is competent to be placed on trial are that he understand the nature of the charges against him and that he be able to co-operate with counsel. In *People* v. *Zerba,* 20 Ill.2d 269, we held that no sanity hearing was required in spite of the fact that defendant had previously been declared to be a criminally sexual psychopath. In *People* v. *Richeson,* 24 Ill.2d 182, we held that no such hearing was required where the evidence showed that the defendant had previously been committed to the Illinois State Hospital in Jacksonville. In that case we noted that commitment to an institution does not necessarily mean that a person lacks mental capacity to stand trial, and pointed out that a defendant might meet the tests indicating his ability to stand trial in spite of the fact that his mind might not be sound on other subjects. In *Withers* v. *People,* 23 Ill.2d 131, we held that the fact that the defendant was confined in the psychiatric division of the penitentiary system immediately after his conviction failed to show that the defendant was mentally incompetent at the time of his conviction. In the present case, even disregarding the hearsay evidence, the evidence at the hearing showed that the defendant was mentally competent to be placed on trial and, aside from the prior commitment to Dixon, there is no indication that any evidence existed to prove defendant's lack of competency. In our opinion the direction of the verdict was proper.

In addition to the proceedings at the sanity hearing, we have before us the record of the proceedings at the time of the defendant's pleas of guilty. In admonishing the defend-

ant as to the consequences of his plea, the court asked the defendant whether he understood that he was in court before a judge to stand trial on the indictments. The defendant replied that he understood and also, in response to the court's further inquiries, stated that he had talked to his attorney and discussed the disposition of the cases with him. The court told the defendant that if there was anything he said to the defendant which he did not understand, the defendant should tell him. On each indictment the court advised the defendant of the possible penalties and asked him whether he was familiar with the facts alleged in each indictment. The defendant replied that he was familiar with the facts and that he wished to plead guilty. After testimony by the State on each of the indictments, the defendant also testified. On the rape indictment he admitted being in the victim's apartment armed with a knife and a gun. He testified that he did not remember having intercourse with her but remembered that he had shot her. He testified that he had been using narcotics on the day of the crime. On each of the murder indictments, the defendant testified that he had attemped to rob the victims and that he had shot them when they "came at him". The testimony of the defendant on each of these charges showed his awareness of the nature of the charges against him and affords further support for the conclusion that the defendant was mentally competent to stand trial.

In our opinion the evidence fails to establish the charge that the defendant's appointed counsel was incompetent and likewise fails to establish the allegation that the defendant was deprived of due process of law by the proceedings at the sanity hearing and by his subsequent pleas of guilty. The judgments of the criminal court of Cook County are therefore affirmed.

*Judgments affirmed.*