THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NATHANIEL LEWIS, Defendant-Appellant.

Fifth District   No. 78-68

Opinion filed August 31, 1979.

John H. Reid and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Martin Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant Nathaniel Lewis was found guilty of burglary in a bench trial in the circuit court of St. Clair County and was sentenced to a term of imprisonment of not less than two nor more than six years. He raises the following issues on appeal: (1) whether the State proved defendant's fitness to stand trial after a *bona fide* doubt of his fitness was raised by the trial court; (2) whether the trial court erred in failing to order *sua sponte* a second fitness evaluation on the basis of defendant's testimony at trial; and (3) whether defendant was denied effective assistance of counsel where his attorney sought to persuade the trial court that defendant was fit to stand trial.

At a pretrial hearing on August 22, 1977, defense counsel requested a 21-day continuance due to his difficulty in communicating with defendant. Counsel informed the court that a review of defendant's medical records revealed that defendant required regular injections of the drug prolixin, and that of late defendant had not been receiving his injections. Counsel asserted that the erratic behavior and lack of communicative skills exhibited by defendant were causally related to his failure to take prolixin. Once defendant resumed his injections of prolixin on a regular basis, counsel maintained, his condition would improve to the point where he would be able to assist in his own defense. The trial court denied the continuance. However, on its own motion the court ordered defendant to be examined by Cheryl Probst, a psychologist, to determine his fitness to stand trial.

A competency hearing was held without a jury on October 14. The sole evidence introduced by the State at the hearing was a fitness report prepared by Probst based on her examination of defendant. Defense counsel agreed to stipulate to the findings and assessment of competency presented in the report.

According to the report, Probst initially contacted defendant on August 24. She found him too distractable and illogical for testing purposes. She noted at this time that the nursing staff at the jail began administering prolixin to defendant. On September 28 Probst noted improvement on defendant's part to the extent that it was possible to conduct tests on him. The results of the tests led her to the conclusion that

defendant was able to understand the charges against him and participate in his own defense. Much of the credit for defendant's improvement was given to the resumption of his prolixin injections.

The trial court then asked defendant if he understood the charges against him and he responded affirmatively. Defendant also indicated he could cooperate with his counsel in the defense of his case. At the close of the hearing the court declared defendant fit to stand trial.

Initially, defendant contends that after the trial court raised a *bona fide* doubt as to his fitness to stand trial the State failed to sustain its burden of establishing his fitness as required by section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(i)). He relies on *People v. Koch* (1978), 64 Ill. App. 3d 537, 381 N.E.2d 377, and *People v. Morthole* (1977), 51 Ill. App. 3d 919, 366 N.E.2d 606, in asserting that a psychologist is not qualified to testify as to the fitness of a defendant. Consequently, he maintains that the psychologist's report designating him fit for trial is incompetent evidence. Since the report was the only evidence presented by the State on the question of his fitness, he concludes that the State has failed to meet its burden of proof as to establishing fitness.

At the time of our opinions in *People v. Morthole* and *People v. Koch* we failed to consider the supreme court case of *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96. Although in that case the supreme court was not directly considering the propriety of testimony by a psychologist regarding competency, they obviously strongly suggested that it should be received and considered. The *Noble* case discussed the qualifications of a psychologist to diagnose the existence and nature of a mental disease and whether there is a causal connection between that disease and the act complained of. If qualified to testify regarding the existence and nature of a mental disease and whether there is a connection between the disease and an act, then just as surely a psychologist would be qualified to testify regarding the competency of a person to stand trial by understanding the nature of the charges made against him and cooperating with his counsel in making a defense.

■■ Pertinent and guiding portions of the *Noble* case are:

"The question as to whether psychologists may testify as experts on questions relating to mental problems is one upon which courts are not in agreement. A number of the cases dealing with the issue are discussed in 78 A.L.R.2d 919, and a supplement thereto in A.L.R.2d Later Case Service, p. 496, and it seems clear that the trend of the more recent decisions is to permit a properly qualified psychologist to testify as to the nature and results of psychological tests administered by him, particularly where those tests have been performed at the request of a psychiatrist and for the purpose of

use by the latter in diagnosing an individual's mental condition. (*Hidden v. Mutual Life Ins. Co.* (4th cir.), 217 F.2d 818; *People v. Hawthorne*, 293 Mich. 15, 291 N.W. 205; *In re Masters*, 216 Minn. 553, 13 N.W.2d 487; 158 A.L.R. 1210; *Watson v. State*, 161 Tex. Crim. 5, 273 S.W. 2d 879; *State v. Donahue*, 141 Conn. 656, 109 A.2d 364; *State v. Padilla*, 66 N.M. 289, 347 P.2d 312; *People v. Davis*, 44 Cal. Rptr. 454, 402 P.2d 142; *People v. Pennington*, 66 Cal. 2d 508, 58 Cal. Rptr. 374, 426 P.2d 942; *Carter v. State* (Okla. Crim.) 376 P.2d 351; *Rollins v. Commonwealth*, 207 Va. 575, 151 S.E.2d 622; *Jenkins v. United States*, 113 App. D.C. 300, 307 F.2d 637; *State v. Tull*, 240 Md. 49, 212 A.2d 729; see, also, *Casimere v. Herman*, 28 Wis. 2d 437, 137 N.W.2d 73; *Simpson v. Heiderich*, 4 Ariz. App. 232, 419 P.2d 362; *Blunt v. United States* (D.C. cir.) 389 F.2d 545; but see *State v. Alexander*, 252 La. 564, 211 So. 2d 650.)

\* \* \*

Traditionally, as is indicated in a number of the cases above cited, this is an area in which the psychiatrist with his medical training has been regarded as pre-eminently qualified. However, as the public and courts have become increasingly aware of the values of psychological testing and treatment, courts have inclined to be more accepting of psychologists as experts, and, depending on the qualifications of the individual witness, to restrict or extend the scope of his testimony accordingly (see *People v. Davis*, 44 Cal. Rptr. 454, 402 P.2d 142; *Jenkins v. United States*, 113 App. D.C. 300, 307 F.2d 637; *State v. Padilla*, 66 N.M. 289, 347 P.2d 312,) even to the extent of permitting the expression of opinions as to the mental condition of the individual.

In this State it has been common practice for trial courts to permit qualified psychiatrists to testify as expert witnesses on the question of the mental condition of the defendant when a defense of insanity is offered (*People v. Myers*, 35 Ill. 2d 311; *People v. Le May*, 35 Ill. 2d 208; *People v. Skeoch*, 408 Ill. 276); likewise, it is clear that clinical psychologists have also testified in such cases (*Myers, People v. Miller*, 33 Ill. 2d 439, 443), apparently expressing, without objection, their opinions as to the defendant's mental condition.

\* \* \*

[O]ur General Assembly in 1963 provided for the registration of psychologists (Ill. Rev. Stat. 1967, ch. 91½, pars. 401 through 427), and that [*sic*] the Mental Health Code (Ill. Rev. Stat. 1967, ch. 91½, par. 1—1 *et seq.*) provides for the emergency commitment of mentally retarded persons upon the certificate of a psychologist (par. 7—1), that psychologists may serve upon examining

commissions (par. 9—3) in cases involving retarded individuals, and that such persons may be discharged (par. 10—1) in proceedings involving the use of psychologists. We note too, that in order to acquire a certificate of registration a psychologist must have among other requirements a doctoral degree in psychology plus 2 years professional experience. These legislative enactments indicate increasing recognition of psychology's contributions to an understanding of human behavior." *People v. Noble* (1969), 42 Ill. 2d 425, 433-36, 248 N.E.2d 96, 101-02.

We accordingly will no longer follow our holding in *People v. Morthole* and *People v. Koch* that psychologists cannot testify regarding competency to stand trial. We hold that the trial court acted properly in receiving and relying upon the testimony of Cheryl Probst that defendant was competent to stand trial. We furthermore find that the court's finding that defendant was competent is not against the manifest weight of the evidence.

A psychologist must possess sufficient training and experience to establish his or her expertise and qualifications to testify in a particular case. It is possible that the extent of the training and experience required could vary with the nature of the case in which the psychologist's testimony is being tendered. Credentials precisely equated to those of the psychologist, Dr. Gurstein, referred to in *People v. Noble* could seldom be duplicated. But duplication would be unnecessary so long as it appears that the background of training and experience, reasonably considered, furnish sufficient basis to qualify a psychologist as an expert upon the subject or issue in inquiry.

We are not unmindful of our decision in *People v. Manning* (1978), 61 Ill. App. 3d 558, 378 N.E.2d 227, where we discussed the qualifications of a psychologist to testify in a restoration hearing. We believe, however, it is properly limited to its facts and should not be controlling of our decision here.

Defendant's next contention is that on the basis of the quality of his testimony at trial the trial court abused its discretion by failing to order *sua sponte* a second evaulation of his fitness. This testimony is characterized in defendant's brief as "bizzare and * * * [bordering] on complete nonsense." Numerous instances are cited where his testimony appears confused, nonresponsive and internally inconsistent.

■■ Due to the denial of due process of law inherent in trying a defendant who is not mentally fit to stand trial (*Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836), a trial court is required, on its own motion, to order an evaulation of a defendant's fitness whenever it becomes apparent during the proceedings that a *bona fide* doubt of his fitness exists. (*Pate v. Robinson*; *People v. Murphy* (1978), 72 Ill. 2d 421,

381 N.E.2d 677; *People v. Fontaine* (1975), 28 Ill. App. 3d 450, 328 N.E.2d 685.) However, the initial determination of whether a *bona fide* doubt exists rests within the discretion of the trial court, and the court's decision will not be overturned on appeal unless there is a clear showing of an abuse of discretion. *People v. Willis* (1978), 64 Ill. App. 3d 737, 381 N.E.2d 799.

■ Upon our examination of the record at trial, we find that the trial court did not abuse its discretion in not ordering a second fitness evaluation of defendant.

In remarks addressed to the bench at the close of trial and prior to the passing of judgment, defense counsel stated that he was of the opinion that defendant was able to cooperate with him and understand enough about the incident so as to forego the raising of an insanity defense. Shortly after these remarks were made a colloquy ensued among the court, defense counsel and defendant concerning what medication defendant was receiving and by whom it had been prescribed. On several occasions defendant supplied relevant information with respect to the medication he was receiving and the doctor who prescribed it. After several minutes of this discussion the prosecutor stated:

> "For the benefit of the record, could you have the record reflect this defendant has answered question [*sic*] even when not asked of them [*sic*]. And he appears to understand exactly what is happening right now."

The court responded:

> "He understands. I am not misled by that up here. I think he knows, but he comes over here with a pretty well reserved outlook, ✿ ✿ ✿."

Despite the conduct and testimony of defendant on the stand, the facts as manifested by defense counsel's remarks with respect to defendant's perception of the charge and his ability to cooperate with counsel, as well as the lucid, relevant information volunteered by defendant concerning his medication, do not warrant a finding that a *bona fide* doubt existed as to defendant's fitness.

Finally, defendant contends that he was denied effective assistance of counsel due to his attorney's efforts at persuading the trial court that he was fit to stand trial. The sole basis for this contention is defense counsel's statements to the court that he was of the opinion that defendant was able to cooperate in his own defense and was fit for trial and sentencing.

■ Where a defense attorney knows that his client is capable of communicating intelligently, and the client, in an apparent attempt to deceive the trier of fact, presents confused or self-contradictory testimony, it is the ethical responsibility of defense counsel to disclose to the trial court the facts as he knows them. (See Illinois Code of

Professional Responsibility, DR 7—102 (A)(6) and (7); DR 7—102(B)(1) (1977).) Our supreme court has held in *People v. Brown* (1964), 31 Ill. 2d 415, 210 N.E.2d 409, that defense counsel's duty with respect to the issue of a defendant's fitness consists not in exerting a maximum effort to obtain a finding that the defendant is unfit, but, rather, in taking all necessary steps to insure a fair determination of the issue. In holding that defense counsel acted properly in disclosing to the court a psychological report which concluded that the defendant was fit, but was malingering, the court stated:

> "It was the obligation of the attorney to place before the court the question of the defendant's sanity, but he was under no obligation to conceal pertinent facts or misrepresent the facts to the court." 31 Ill. 2d 415, 419, 201 N.E.2d 409, 411.

Effective assistance of counsel does not include the participation of a defense lawyer in the perpetration of a fraud on the trial court. Consequently, on the basis of DR 7—102(A)(6) and (7), DR 7—102 B(1), and *People v. Brown* we reject defendant's claim of ineffective assistance of counsel.

For the foregoing reasons we affirm the judgment finding defendant guilty of burglary.

Affirmed.

G. MORAN and KARNS, JJ., concur.