THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICKY HOLMAN, Defendant-Appellant.

Fifth District   No. 81—177

Opinion filed May 24, 1983.

James Hackett, of Edwardsville, and J. Ray Wood, of Benton, for appellant.

Don W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and David J. Mullett, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Following a joint trial in the circuit court of Madison County, defendant Ricky Holman and Girvies Davis were convicted of the July 13, 1979, murder of Esther Sepmeyer. Davis was tried and sentenced by the court. Defendant was tried by a jury and was sentenced by the court to life imprisonment. Defendant appeals, contending that he was denied his statutory right to a speedy trial, that the trial should have been severed, that he was denied effective assistance of counsel and that the court should have inquired into his competency to stand trial. We affirm.

Esther Sepmeyer, 83, lived in a rural Madison County farmhouse with her grandson, Rodney Sepmeyer. When Mr. Sepmeyer returned from work on July 13 he found his grandmother lying up against her bed with a bullet wound on the right side of her face. The bedroom and kitchen were in disarray. A new Remington semi-automatic .22-caliber rifle had been taken from its case and a television, stereo turntable, lawn mower and radio were missing.

Investigation by police revealed that the bullet removed from Sepmeyer's body was fired from a .22-caliber weapon. A lawn mower and radio, identified by relatives as belonging to Sepmeyer, were found in the home of Girvies Davis. Fingerprints taken from a mirror in Sepmeyer's home and from the metal cabinet where the rifle was stored were matched to defendant.

Both defendant and Davis made statements to the police. The statements, which were consistent with the results of the investigation, revealed the approximate location of the farmhouse and identified the items stolen. Both statements related that Sepmeyer was shot with her own rifle. Davis admitted that he loaded the gun and claimed that defendant actually shot Sepmeyer while defendant claimed Davis was responsible for the shooting.

■ Defendant first argues that he was denied his statutory right to a speedy trial. The relevant portion of section 103—5(a) of the Code of Criminal Procedure of 1963 provides: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody ***." (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a).) Section 103—5(d) requires that defendant be discharged from custody if he is not tried in accordance with subsection (a). Ill. Rev. Stat. 1981, ch. 38, par. 103—5(d).

Defendant was charged by information on January 8, 1980. At that time he was being held in St. Clair County on several unrelated charges. Pursuant to a writ of *habeas corpus ad prosequendum*,

defendant was brought to Madison County on January 18 for preliminary hearing and arraignment. Defendant was then returned to St. Clair County authorities and was eventually tried and convicted on three charges. The last charge pending in St. Clair was dismissed on November 18, 1980. Defendant's Madison County trial commenced March 9, 1981.

Defendant claims the statutory 120-day period began to run in January of 1980 when he was originally placed in the custody of Madison County authorities. As a result, the March 1981 trial date was well beyond the 120-day limit and the charges should have been dismissed. The State argues that the 120-day period began to run at the termination of all proceedings in St. Clair County on November 18, 1980.

We find no violation of defendant's statutory right to a speedy trial. The question of when the 120-day period begins to run in cases where defendant is charged with unrelated crimes in two counties has been addressed by the courts. The court in *People v. Clark* (1968), 104 Ill. App. 2d 12, 244 N.E.2d 842, held that where defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, he is not in custody for the latter offense until the proceedings against him in the first county are terminated and he is either returned to, or held in custody for, the second county.

Recently we have applied the rule in *Clark* to a case with circumstances very similar to those in the present case. In *People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318, defendant was arrested and held in Jackson County on a possessory weapon charge. During this time, a Williamson County arrest warrant was served on defendant, and he later appeared in Williamson County on those charges. He was returned to Jackson County where several months later the prosecution was concluded. We held that the 120-day period did not begin to run on the Williamson County charge until the termination of proceedings in Jackson County at which time defendant was held for Williamson County. (105 Ill. App. 3d 103, 112, 433 N.E.2d 1318, 1324.) The fact that defendant was temporarily brought to the noncustodial county for an appearance did not commence the running of the 120-day period. *People v. Gardner* (1982), 105 Ill. App. 3d 103, 433 N.E.2d 1318; accord, *People v. Hatch* (1982), 110 Ill. App. 3d 531, 442 N.E.2d 655.

Defendant's reliance on *People v. Vaughn* (1972), 4 Ill. App. 3d 51, 280 N.E.2d 253, and *People v. Gray* (1967), 83 Ill. App. 2d 262, 227 N.E.2d 159, is misplaced. In each of those cases, proceedings in the

64

first custodial county had terminated and defendant was serving his sentence when arrest warrants were issued by a second county. Apparently as a matter of cooperation between county officials, the arrest warrants were not served on defendant but were held by prison officials for the second county until defendant was released from prison. The court in each case held that since defendant was subject to the jurisdiction of the second county, although incarcerated, the State had a duty to prosecute within 120 days of discovering defendant's whereabouts and the issuance of the arrest warrant. In the present case, charges against defendant were still pending in the first county so that defendant was unavailable for prosecution in Madison County until termination of those proceedings. Thus, the 120-day period began to run on November 18, 1980, the day proceedings in St. Clair County were concluded and as a result, the State has complied with section 103—5(a). Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a).

■ Defendant also argues that the trial court erred in denying his motion to sever. Defendant relies on the fact that a confession by one codefendant which incriminates another is generally grounds for severance. The United States Supreme Court so held in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. Because of the substantial risk that the jury, despite instructions to the contrary, looks to the incriminating statement of a codefendant in determining guilt, the conviction of defendant where the statement is admitted must be reversed. (391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1620, 1622.) Defendant points to Davis' statements which claimed defendant was responsible for shooting Sepmeyer. While defendant acknowledges that Davis' statement was not admitted before the jury, he believes the court, by reading the entire statement, may have been prejudiced in making evidentiary rulings and in ruling on pretrial and post-trial motions.

■ We conclude that no *Bruton* problem arose in this case because the jury was unaware of Davis' statement. Neither do we find any evidence of prejudice by the court. Defendant has failed to prove specifically how he was prejudiced or that the outcome of the trial would have differed if the causes were severed. Mere allegations of prejudice are insufficient. *People v. Rhodes* (1969), 41 Ill. 2d 494, 497, 244 N.E.2d 145, 147.

■ ■ Defendant next contends he was denied effective assistance of counsel. He asks us to consider trial counsel's failure to question his competency to make a voluntary confession and to stand trial and counsel's failure to present a defense in his behalf.

In connection with an earlier, unrelated charge, defendant was ex-

amined by a court-appointed psychiatrist and was later referred to a psychologist for evaluation of possible neurological problems. Both doctors reported borderline mental retardation and there was evidence of neurological damage. The psychiatrist made a later evaluation based on the neurological tests and information from a children's home in which defendant had been placed in 1976. It was the doctor's opinion that although defendant was severely handicapped in intellectual ability, he was able to tell the difference between right and wrong.

Defendant argues that competent counsel would have demanded a competency hearing on the basis of the extremely low intelligence scores and the evidence of neurological problems. We disagree.

Although defendant tested in the borderline mentally retarded range, evidence of limited intellectual ability does not in itself make one incompetent to stand trial. (*People v. Willis* (1978), 64 Ill. App. 3d 737, 741, 381 N.E.2d 799, 803.) The psychiatrist did find that defendant had the capacity to exercise judgment, and our review of the record leads us to conclude that defendant understood the nature of the proceedings.

Neither are we persuaded by the claim that defendant's counsel presented no defense. Although no witnesses testified for defendant, nor did defendant take the stand, counsel is not required to manufacture a defense where none exists. (*People v. Elder* (1979), 73 Ill. App. 3d 192, 203, 391 N.E.2d 403, 411.) Defendant does not suggest what more trial counsel could have done. We note that counsel consistently maintained in motions and in argument that defendant's confession should be suppressed, that severance should have been allowed and that the fingerprint identification of defendant was questionable. Thorough cross-examination of the State's witnesses was conducted. In light of the State's evidence and these efforts by counsel, we find no error.

Finally, defendant believes the court had a duty to inquire into his competence to stand trial.

■■ Whenever it becomes apparent during the proceedings that a *bona fide* doubt of defendant's competence exists, it is the court's duty to stop the proceedings and determine competency before continuing. (*People v. Lewis* (1979), 75 Ill. App. 3d 560, 565, 393 N.E.2d 1380, 1383-84.) However, we find nothing in the record to suggest that defendant was unable to understand the proceedings below and while the court may have reviewed the intellectual and neurological evaluation of defendant, we have already stated that low intelligence is not conclusive of incompetence. The trial court is in the best posi-

tion to evaluate defendant's behavior, and its decision in that regard will not be reversed on appeal absent an abuse of discretion. *People v. Lewis* (1979), 75 Ill. App. 3d 560, 565, 393 N.E.2d 1380, 1383-84.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON, P.J., and JONES, J., concur.