NOTICE
Decision filed 07/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220728-U

NO. 5-22-0728

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clay County. |
| | ) | |
| v. | ) | No. 21-CF-75 |
| | ) | |
| ROGER W. McCARTY, | ) | Honorable |
| | ) | Joel J.C. Powless, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Sholar* concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's appeal is dismissed for his failure to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) for not filing a motion to withdraw his guilty plea, and where there was no *bona fide* doubt as to his fitness.

¶ 2    The defendant, Roger W. McCarty, appeals the judgment of his fully negotiated plea and sentence without having first filed a motion pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). He argues that there was a *bona fide* doubt regarding his fitness, and therefore, the trial court should have *sua sponte* ordered a fitness evaluation. Furthermore, he asserts that because there was a *bona fide* doubt as to his fitness, he was not required to comply with Rule 604(d). He asks that we vacate his guilty plea and remand for a fitness hearing. For the following reasons, we

_____

*For administrative reasons Justice Sholar has been substituted on the panel for Justice Welch. Justice Sholar has read the briefs in this case and has listened to the recording of oral argument.

1

dismiss this appeal for his failure to comply with Rule 604(d).

¶ 3                                I. BACKGROUND

¶ 4      We recite only those facts necessary for our disposition. On October 22, 2021, Roger McCarty was charged with three counts of unlawful delivery of methamphetamine in violation of section 55(a) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a) (West 2020)). On January 28, 2022, a public defender was appointed to represent McCarty, and on June 27, 2022, McCarty requested the appointment be vacated and that he be permitted to proceed *pro se*. McCarty, after that, filed several *pro se* motions, some of which proceeded to hearings. The matter was set for a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012) on August 22, 2022, and a jury trial on September 6, 2022.

¶ 5      On August 22, 2022, it was reported that McCarty was in the hospital due to a possible stroke. The matter was continued to August 24, 2022, for a final pretrial as well as a Rule 402(d) conference. On August 24, 2022, the trial court held the rescheduled hearing, at which McCarty appeared, and the following exchange occurred:

          "THE COURT: We've got a couple of things going on here. This is technically

     final pretrial. It's also set for 402 conference and we're set for jury trial in September. Mr.

     McCarty, where are we at? What are we doing and are you still wanting to do this 402

     conference today? Where are you at? I understand you had some medical issues. That's

     why this was moved to today because I didn't want to take it off the jury setting without

     you at least being here to tell me, you know, what's going on and what you want to do.

          DEFENDANT: At this time, Your Honor, if it's possible, I really think I need an

     attorney. This last deal has, it's affected my train of thought. I have suffered some memory

     loss. I don't even really know—I don't know what to do.

2

THE COURT: Do you have any objection to me appointing him an attorney, State?

MR. GIVENS: Judge, I don't—that's—he's been speaking about it off and on before. I don't really have an objection to it. If he's having train of thought issues, I would be apt to ask for a fitness evaluation, but I have no problem with an attorney being appointed."

The trial court then responded as follows:

"Here's the deal. It's ultimately at my discretion. *** [Your attorney] was, I guess, removed from the case. I gave you the option of other attorneys. At that time, you wanted to represent yourself, and we went through the admonishments, and so it is my discretion whether to appoint you one or not.

To be honest with you, your charges are serious enough that I would think you would want an attorney. I don't have any issue with that, especially since the State doesn't have any objection and you're having medical issues."

¶ 6    The trial court then cautioned McCarty that, if he was appointed an attorney, his attorney would likely seek to continue his upcoming jury trial. However, the trial court indicated that, unless McCarty personally asked for the trial date to be continued, it would remain on the calendar "for now." McCarty then responded, "So I need to ask you to move that date?" The trial court then explained to McCarty that he did not have to request that his trial date be vacated, but if he wanted a continuance to allow his new counsel time to prepare, it would be granted, and his trial would be rescheduled for October. However, if he did not make the request, then the current trial date would remain. When the trial court asked McCarty if he understood, McCarty responded, "Yeah."

¶ 7    When the trial court then indicated that McCarty did not ask for a continuance, so the trial date would remain, McCarty responded, "So I'm asking you to move then." The court then verified

that McCarty wanted the trial date moved, and McCarty said, "Yes. If that's what it's—if that's what I need to do to get an attorney, yeah." The trial court explained that it would appoint McCarty an attorney either way, regardless of whether the trial date was continued, and asked McCarty if he wanted to continue the trial until October. McCarty asked again what the date was, and the trial court responded. The trial court also noted that McCarty's new counsel would have about one week to prepare for trial if it was not continued. The trial court asked McCarty if he wanted the court to confirm his jury trial date set for September 6, and McCarty responded, "I guess not." The trial court then asked McCarty what he was asking the court to do, and he said, "To continue the jury trial. I'm not sure what I'm supposed to be asking here." In response, the trial court indicated that it was just going to keep the date for trial in September and that McCarty could talk with his counsel about whether the trial date should be continued. The court also appointed McCarty counsel and set the final pretrial for August 29, 2022.

¶ 8 On August 29, 2022, McCarty and his appointed counsel appeared for the final pretrial. Defense counsel informed the court that she had met with McCarty and was moving to continue the trial date based on her conversation with him. She also indicated that she had discussed with McCarty about how the delay would be attributable to him, and he understood. After verifying with the defendant that he understood that the delay would be attributed to him, the trial court then rescheduled the trial for December.

¶ 9 The next court date occurred on October 12, 2022, and the State indicated that the parties had a negotiated plea to present on count II. The State further indicated that, in exchange for McCarty pleading guilty to one count of unlawful delivery of methamphetamine, the State would recommend a sentence of 18 years' imprisonment, dismiss the remaining counts, and return the $1,634 that had been seized from McCarty to him. Also, under the agreement, McCarty was

4

permitted a one-day visit with his wife at the care facility where she was receiving hospice care for terminal cancer. The trial court then verified the terms of the plea agreement with McCarty and made sure that he understood the charge against him, the applicable sentencing ranges for the charge, and the rights that he was giving up by pleading guilty. The court also questioned McCarty to determine whether the guilty plea was knowingly and voluntarily made. McCarty affirmatively responded that he understood his rights and that no one was forcing or coercing him into taking the plea. The trial court found that McCarty's guilty plea was knowingly and voluntarily made. The following discussion then occurred after a recitation of the factual basis:

"THE COURT: And, Mr. McCarty, you heard that basis recited on the record. Do you have any objection to that factual basis?

DEFENDANT: No. Your Honor, I would like the record to show—I know—I just want it to be part of the record.

THE COURT: You might want to discuss this with your attorney first and, if she's okay with you talking, we can go from there.

DEFENDANT: It's not going to change my plea. I'm still going to take the guilty plea but I just want the record to show—

MS. WANTUCK: Roger, you shouldn't speak.

DEFENDANT: Forget it.

THE COURT: Okay. Thank you. I will show that neither Miss Wantuck or Mr. McCarty have an objection to the factual basis recited on the record. This Court does find that factual basis does exist. This Court will agree to the terms of the negotiated plea. Before we do that, Mr. McCarty, I'm going to ask you right now, before I get into the sentencing and what's been agreed to, I'm going to ask you one last time, this is your last

5

chance to change your mind about your plea of guilty. Have you thought through thoroughly of what you're doing here today?

DEFENDANT: Yeah.

THE COURT: And did you discuss this with your attorney?

DEFENDANT: Yes.

THE COURT: And do you wish to stand by your guilty plea?

DEFENDANT: Yes.

THE COURT: And are you satisfied with the services of your attorney?

DEFENDANT: I plead the Fifth on that one.

THE COURT: And I will show you are making no statement regarding the services but you, yourself, have thought through this thoroughly. You've thought through this thoroughly?

DEFENDANT: Yes.

THE COURT: One last time, you wish to stand by your plea of guilty?

DEFENDANT: Yes."

¶ 10     The trial court accepted the negotiated plea and then admonished McCarty pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), asking McCarty if he understood his appeal rights, to which he responded in the affirmative. On November 10, 2022, McCarty filed a notice of appeal.

¶ 11     On appeal, McCarty argues that the trial court abused its discretion by failing to order a fitness evaluation or conduct a fitness hearing, asserting that there was a *bona fide* doubt concerning his fitness. He argues that on August 24, 2022, when he appeared in court and requested the appointment of counsel, stating, "This last deal has, it's affected my train of thought. I have

suffered some memory loss. I don't even really know—I don't know what to do," triggered the trial court to appoint an attorney and that these statements were "significant enough to call into question McCarty's capacity to continue to represent himself." He argues that once a *bona fide* doubt of fitness is raised, the trial court is obligated to "determine the issue before allowing the prosecution to proceed," referring to section 104-11(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11(a) (West 2020)). He contends that the trial court failed to order a fitness evaluation, thus depriving him of his "right not to be tried, convicted, or sentenced, while unfit."

¶ 12    McCarty asserts that he raised a *bona fide* doubt as to his fitness when he informed the trial court of his lack of competence to proceed *pro se*, telling the trial court that he was experiencing "memory loss" and that the "stroke" had affected his train of thought. He maintains that the issues he described were not merely " 'medical' issues, they were, as the State recognized, issues of cognitive impairment and diminished capacity. In other words, they were *bona fide* doubts concerning [his] fitness."

¶ 13    McCarty further asserts that *bona fide* doubt concerning his fitness was evident by changes in his behavior and demeanor throughout the pendency of the matter. He states that before the medical issue, he was able to file *pro se* motions, subpoena witnesses, and participate in contested motions. He contends that his "cognitive difficulties" were so apparent that the State believed a fitness evaluation may be appropriate.

¶ 14    McCarty relies on *People v. Sandham*, 174 Ill. 2d 379 (1996), where the Illinois Supreme Court reversed a defendant's conviction and remanded for a new trial after finding that a *bona fide* doubt of the defendant's fitness had arisen before his conviction, but no fitness hearing had been held. The appellate court identified several factors that should have led the trial court to find, *sua sponte*, that a *bona fide* doubt of fitness existed. McCarty contends that while his fitness is

"different in character from that in *Sandham*, the same result is required." He argues that the trial court was aware that he had had a stroke and that he had informed the trial court that his stroke had affected his ability to maintain his train of thought and his memory. He asserts that "[t]hese facts, combined with the trial court's knowledge that [his] 'medical issues' weighed in favor of the reappointment of counsel, demonstrate that here, as in *Sandham*, the trial court should have conducted a fitness inquiry *sua sponte*." He requests that his guilty plea be vacated, and the cause be remanded for a fitness determination.

¶ 15    In response, the State argues that no *bona fide* doubt was raised concerning McCarty's fitness, asserting that his statements after requesting an attorney refute the argument that he was mentally unable to comprehend the proceedings such that he could not knowingly and voluntarily plead guilty. It further contends that his fitness "must be evaluated with special concern for the notion that the trial court is in a much better position of evaluating defendant's mental fitness." The State asserts that because McCarty was competent enough to request a continuance of the jury trial, he "was utilizing rational decision making and assisting in his own defense." The State points out that the trial court had numerous discussions with McCarty and was in the best position to determine his mental capabilities. Since the trial court did not request a fitness evaluation, there was evidently no *bona fide* doubt about McCarty's fitness.

¶ 16    The State also argues that McCarty "was not acting mentally irrational, nor did his demeanor indicate mental incompetence given defendant rationally evaluated what was being asked of him in filing motions, supporting arguments and representing himself, and decided his stroke impacted him enough to warrant the need for help from an attorney." The State maintains that McCarty repeatedly asserted that he understood the nature and purpose of the proceedings and could assist in his defense, thus indicating that there was no *bona fide* doubt about his fitness.

8

¶ 17    In reply, McCarty argues that a *bona fide* doubt about his fitness was raised when the parties agreed that such doubt existed and by "McCarty's evident inability to comprehend the trial court's instructions or assist in his own defense thereafter." He asserts that his exchange with the trial court at the August 24, 2022, hearing about continuing the trial date revealed his confusion and evidenced his fitness difficulties.

¶ 18    McCarty claims "the disorientation and confusion he displayed during the remainder of the August 24, 2022, hearing substantiate the *bona fide* doubt of fitness he expressly raised to the trial court just minutes earlier." He asserts that when a *bona fide* doubt about fitness is raised, the trial court must hold a fitness hearing before proceeding any further. He argues that the record of the guilty plea establishes that the *bona fide* doubt as to his fitness "lingered" because he only answered "yes" or "no" questions, interrupted the court but was told by his attorney that he should not speak, and asserted the fifth amendment when asked if he was satisfied with his attorney's services. He claims his "rote responses, no matter how numerous, were insufficient to establish his fitness."

¶ 19    McCarty further asserts that the State cannot now argue that there was no *bona fide* doubt as to his fitness because the State recognized that a *bona fide* doubt of fitness existed when it stated that a fitness evaluation would be "apt." He asserts that the trial court appointing counsel for him demonstrated that he was suffering from cognitive impairments "that were sufficiently incapacitating." He argues that his statements showing his dissatisfaction with his attorney indicated that he was incapable of assisting with his defense. He maintains that a *bona fide* doubt as to his fitness existed, and thus, his guilty plea must be vacated, and the cause remanded for a fitness hearing.

¶ 20                               II. ANALYSIS

¶ 21    McCarty pled guilty pursuant to a negotiated plea on October 12, 2022. On November 10, 2022, he filed the present notice of appeal. Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) states that if a defendant wishes to appeal following a judgment based on a negotiated guilty plea, the defendant must first file a motion to withdraw the guilty plea within 30 days after being sentenced. McCarty did not file any such motion. Generally, an appellate court must dismiss an appeal when the defendant has failed to follow Rule 604(d). *People v. Jones*, 349 Ill. App. 3d 255, 258-59 (2004) (citing *People v. Flowers*, 208 Ill. 2d 291 (2003); *People v. Wilk*, 124 Ill. 2d 93 (1988)). However, Rule 604(d) must be read in conjunction with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), which requires the trial court to admonish a defendant who has pled guilty concerning the appellate procedures of Rule 604(d). *People v. Jones*, 349 Ill. App. 3d 255, 259 (2004). "If there is a *bona fide* question concerning the defendant's fitness, the defendant cannot be presumed to have understood the court's Rule 605 admonishments." *Id.* "Under such circumstances, the appellate court is not required to dismiss an appeal if the defendant failed to comply with Rule 604(d)." *Id.* (citing *People v. McKay*, 282 Ill. App. 3d 108 (1996)). In other words, McCarty's failure to comply with Rule 604(d) does not automatically require us to dismiss his appeal because that failure might be excused, as he contends, by his mental condition when he was given the Rule 605 admonishments. If this is the case, McCarty cannot be presumed to have understood the trial court's Rule 605 admonishments concerning Rule 604(d)'s appellate procedures, and we would not be required to dismiss the appeal.

¶ 22    The Code of Criminal Procedure of 1963 states that there is a presumption of fitness to stand trial and be sentenced (725 ILCS 5/104-10 (West 2020)) and subjecting an unfit defendant to trial is a violation of the defendant's substantive due process rights. U.S. Const., amend. XIV;

10

Ill. Const. 1970, art. I, § 2; *People v. Tapscott*, 386 Ill. App. 3d 1064, 1075 (2008). "More specifically, a due-process violation would occur if the defendant is unable to understand the nature and purpose of the proceedings or assist defense counsel in his own defense." *Tapscott*, 386 Ill. App. 3d at 1075. "Although any party may raise the issue of a defendant's fitness at any appropriate time, when a *bona fide* doubt exists as to the defendant's fitness, the trial court must *sua sponte* order a determination of the defendant's fitness before proceeding further." *Tapscott*, 386 Ill. App. 3d at 1075; 725 ILCS 5/104-11(a) (West 2020). "A *bona fide* doubt exists when the facts raise a real, substantial, and legitimate doubt regarding a defendant's mental capacity to meaningfully participate in his defense." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 54 (citing *People v. Washington*, 2016 IL App (1st) 131198, ¶ 72). Whether a *bona fide* doubt exists is determined within the trial court's discretion. *Tapscott*, 386 Ill. App. 3d at 1075 (citing *People v. Straub*, 292 Ill. App. 3d 193, 198 (1997)).

¶ 23    Here, McCarty would have us believe that there was a *bona fide* doubt regarding his fitness and that the trial court should have, *sua sponte*, ordered a fitness evaluation. We disagree. "Relevant factors that the trial court may consider in assessing whether a *bona fide* doubt exists include (1) the defendant's behavior and demeanor, (2) prior medical opinions regarding the defendant's competence, and (3) defense counsel's representations about the defendant's competence." *Westfall*, 2018 IL App (4th) 150997, ¶ 54 (citing *People v. Rosado*, 2016 IL App (1st) 140826, ¶ 31). First, McCarty did not present with any concerning behavior or demeanor in any of the hearings on August 24, 2022, or onward. He maintains that a *bona fide* doubt as to his fitness was evident on August 24, 2022, when he told the trial court that his train of thought was affected, that he suffered from memory loss, and that he may need a lawyer. However, to the contrary, these statements were not akin to making irrational or incoherent statements, nor did such

11

comments call into question his ability to understand the circumstances. Instead, those statements indicated competency and responsibility on McCarty's part, as he realized that the complexity of his case warranted the appointment of counsel. He had the clarity of mind to request the appointment of counsel when he realized that he could not comprehend the complicated legal matters he faced. McCarty had previously asked and then fired his appointed counsel. On August 24, 2022, McCarty was explaining to the trial court why he felt it necessary to have appointed counsel again. While McCarty may have been suffering from train of thought issues and memory loss, they were not to the extent that they affected his reasoning to do what was best for him nor did they affect his ability to make such a request. "Fitness speaks only to a person's ability to function within the context of a trial; a defendant may be fit to stand trial even though the defendant's mind is otherwise unsound." *People v. Griffin*, 178 Ill. 2d 65, 79 (1997).

¶ 24     McCarty argues that the dialogue with the trial court on August 24, 2022, regarding vacating the jury trial date indicates his "disorientation and confusion." We disagree. McCarty merely did not understand that he needed to make a motion to continue the trial date as opposed to the trial court continuing it on its own. There is a difference between not understanding due to lack of knowledge and not understanding due to disorientation and confusion. The exchange between the trial court and McCarty regarding vacating the jury trial date exhibited no disorientation or confusion. Rather, based on the judge's response to McCarty's questions, it appears McCarty was asking what the continued trial date would be so he could calculate how far off the jury trial was in comparison to the present setting. This clearly indicates McCarty's ability to reason regarding what the best course of action for him would be. The questions posed by McCarty further supported the trial court's conclusion that reappointing an attorney would be in

12

McCarty's best interests due to the complexity of the matter and McCarty's lack of knowledge of legal issues, not because there was a *bona fide* doubt as to his fitness.

¶ 25 The trial court appearances that followed August 24, 2022, further establish McCarty's sound mind and ability to understand and comprehend the proceedings as they occurred. At those hearings, McCarty appropriately answered the trial court's questions and did not require them to be repeated or rephrased. McCarty would lead us to believe that just because he answered "yes" or "no" to most of the questions, there was a *bona fide* doubt as to his fitness. We find this argument unpersuasive as the questions posed by the trial court required only "yes" or "no" answers. McCarty responded in a manner expected based on the questions posed by the trial court. His responses to the questions were appropriate, demonstrated his ability to understand the proceedings, and in no way denoted a *bona fide* doubt as to fitness. "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2020). Such is not the case here. McCarty understood the proceedings, as evidenced by his appropriate answers to the questions from the trial court.

¶ 26 Second, despite being in the hospital days prior, McCarty presented no medical reports or records to the trial court explaining his absence. On the first court appearance following his undefined medical issue, McCarty explained to the trial court why he believed he needed the reappointment of counsel. He did not provide the trial court on that date or any of the following court appearances with medical records explaining any condition from which he may have suffered. "A defendant's diminished mental capacity does not, standing alone, make the defendant unfit to stand trial." *Tapscott*, 386 Ill. App. 3d at 1075 (citing *People v. Johnson*, 183 Ill. 2d 176, 194 (1998)).

13

¶ 27    Finally, neither his attorney nor the state's attorney concluded that McCarty's statements warranted a fitness evaluation. While commenting that a fitness evaluation is "apt" on August 24, 2022, the state's attorney took no further action on that day or any of the other following court dates. If the state's attorney was indeed concerned regarding McCarty's fitness, as an officer of the court, he should have brought it to the trial court's attention by either oral or written motion. "The duty of a public prosecutor is to seek justice, not merely to convict." Ill. R. Pro. Conduct R. 3.8 (eff. Jan. 1, 2016). He did not raise the issue, thus indicating his belief that McCarty was of sound mind and ability to comprehend the circumstances.

¶ 28    Further, McCarty was able to assist in his defense, and was, seemingly without difficulty, able to participate in the negotiations for the guilty plea as indicated by his trial counsel's lack of request for a fitness evaluation. "[D]efense counsel's representations concerning his client's competency, while not conclusive, are another essential factor to consider." *Tapscott*, 386 Ill. App. 3d at 1076 (citing *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991)). McCarty's trial counsel met with him outside of court and appeared in the trial court with him at least three times. She was in the best position to determine whether there was a *bona fide* doubt about McCarty's fitness or whether he could not assist her in his defense. Trial counsel could have raised a fitness issue based on these numerous interactions but did not. "[D]efense counsel's duty with respect to the issue of a defendant's fitness consists not in exerting a maximum effort to obtain a finding that the defendant is unfit, but, rather, in taking all necessary steps to insure a fair determination of the issue." *People v. Lewis*, 75 Ill. App. 3d 560, 566 (1979). Defense counsel's decision not to file a motion or request a fitness evaluation supports the trial court's similar observations of McCarty that no *bona fide* doubt as to his fitness existed.

¶ 29    McCarty additionally argues that because his attorney cut him off when he wanted to say something to the trial court during his guilty plea, and because he pleaded the fifth amendment regarding his opinion of her assistance, there was a *bona fide* doubt about his fitness. However, "a defendant's disagreements with counsel do not necessarily raise a *bona fide* doubt as to fitness to stand trial." *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 90. A defendant vocalizing his dissatisfaction with his attorney's services does not equate to the defendant being unfit. Instead, this situation supports McCarty's fitness as he was able to cleverly convey his dissatisfaction with his attorney to the trial court by invoking "the Fifth."

¶ 30    McCarty argues that because the trial court appointed him an attorney when he requested one, it indicated that the trial court had concerns regarding his fitness, and therefore, it should have immediately ordered a fitness hearing. This claim lacks merit. Countless defendants are appointed counsel upon their request. McCarty's argument that we correlate this appointment to a *bona fide* doubt as to fitness would lead to absurd results. Under McCarty's argument, any time a request for the appointment of an attorney would be granted, the defendant could then, on appeal, raise an argument that because an attorney was appointed, it meant the trial court had a *bona fide* doubt as to the defendant's fitness. We decline to accept such a proposition. If "[t]he mere act of granting a defendant's motion for a fitness examination cannot, by itself, be construed as a definitive showing that the trial court found a *bona fide* doubt of the defendant's fitness" (*People v. Hanson*, 212 Ill. 2d 212, 222 (2004)), the act of granting the request for the appointment of counsel is not a showing of *bona fide* doubt.

¶ 31    Lastly, McCarty relies on *People v. Sandham*, 174 Ill. 2d 379 (1996), to support his proposition that there was a *bona fide* doubt as to his fitness. However, *Sandham* is factually distinguishable from the present case. In *Sandham*, the Illinois Supreme Court reversed the

15

defendant's conviction and remanded for a new trial after finding that a *bona fide* doubt of the defendant's fitness had existed before the conviction. In that case, the court pointed out several factors that the trial court should have noticed to find a *bona fide* doubt as to fitness:

> "(1) the public defender's oral motion, which the trial court granted, to obtain a psychiatric evaluation to determine defendant's fitness; (2) the continuance of the trial due to defendant's inability to cooperate with defense counsel except with difficulty and the defendant's ensuing commitment to a psychiatric ward; (3) defendant's two letters to the court which were complimentary and exceedingly hostile, respectively, and which spoke of defendant beginning his 'real life' after sentencing; (4) defendant's threatening phone calls to the trial judge; (5) the testimony of complainant's mother that defendant was not 'all the way there' and would sometimes run outside and start praying loudly to God; (6) the Pfeiffer Center evaluation testimony which suggested that defendant had a slight chemical imbalance and was slightly schizophrenic; (7) defendant's ingestion of psychotropic medications at or about the time of trial and/or sentencing; and (8) defendant's irrational outbursts during the sentencing hearing regarding his brain being cut out, his conversation with his mother, his 'top of the charts' albums and his comic books." *Id.* at 388.

These factors are not even remotely similar to the present situation. We have no medical records or documents concerning McCarty's hospitalization nor any suggestion of a mental diagnosis or psychotropic medications. We have no outbursts or letters penned by McCarty to the trial court. There was no indication that McCarty had difficulty in cooperating with his attorney. We have no irrational and erratic behavior. McCarty's reliance on this case to support his proposition that there was a *bona fide* doubt as to his fitness is misguided.

¶ 32                                    III. CONCLUSION

¶ 33      McCarty missed a court date due to a medical issue and, upon his return two days later, simply told the trial court that his train of thought was "off," that he was having some memory issues, and that he would like an attorney reappointed for him. At the subsequent two court appearances, he appropriately responded to the trial court's questions and, seemingly without difficulty, proceeded through a negotiated plea hearing. Where McCarty neither behaved irrationally during proceedings at which he entered his guilty plea nor exhibited difficulties in responding to the trial court's questions, we find that the trial court did not abuse its discretion in not finding a *bona fide* doubt as to his fitness and not, *sua sponte*, ordering a fitness evaluation. Since we determine that there was no *bona fide* doubt regarding McCarty's fitness, we must dismiss this appeal for McCarty's failure to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 34      Appeal dismissed.