# Illinois Official Reports

## Appellate Court

---

### *People v. Wilber*, 2018 IL App (2d) 170328

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK J. WILBER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0328 |
| Filed | November 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 16-CM-522; the Hon. James M. Hauser, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Carl H. Larson, State's Attorney, of Freeport (Patrick Delfino, David J. Robinson, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Zenoff and Spence concurred in the judgment and opinion. |

¶ 1        Defendant, Patrick J. Wilber, was charged by information with two counts of harassment through electronic communication (720 ILCS 5/26.5-3(a)(5) (West 2016)). The information alleged that defendant threatened injury to Carol Reinke and her family (count I) and to Clarence Reinke and his family (count II). The trial court found that there was a *bona fide* doubt as to defendant's fitness to stand trial, and a fitness hearing was held before a jury. Defendant hoped to establish that he was fit, but defendant's attorney moved for a directed verdict of unfitness at the close of the State's case-in-chief. The trial court granted the motion, and defendant brought this appeal. We affirm.

¶ 2        On November 4, 2016, the trial court entered the order finding a *bona fide* doubt as to defendant's fitness. Although defendant was represented by counsel, on November 17, 2016, defendant filed a long, rambling *pro se* document that defies a concise summary. Within the document, defendant explained that intoxication and a dispute over a lawnmower led him to send a text message threatening to kill Clarence if he "f***[ed]" with defendant anymore. Defendant contended that he used the word "kill" figuratively to express his anger, not as an actual threat. In support of the contention, he relied on, *inter alia*, biblical passages and a scene from "The Andy Griffith Show." He also accused a police officer of trying to frame him, altering a video recording, and falsely reporting that defendant had made an inculpatory statement. Defendant compared the situation to a widely publicized incident in which a police officer had killed a motorist during a traffic stop. He accused his attorney of covering up the video by filing a motion to suppress. He also lamented the state of the world generally, mentioning earthquakes, terrorism, and refugeeism, among other things.

¶ 3        Jury selection proceeded swiftly. The trial court asked the jurors questions that it formulated in advance in consultation with the prosecutor and defense counsel. The prosecutor and defense counsel asked no questions. Furthermore, neither the prosecutor nor defense counsel challenged any juror for cause, used any peremptory challenges, or made an opening statement. Outside the presence of the jury, the prosecutor advised the trial court that he anticipated that the State would be unable to meet its burden of proving that defendant was fit.

¶ 4        At the hearing, Jennifer Aurand, a licensed clinical psychologist, testified for the State that defendant was referred to her for an evaluation of his fitness to stand trial. According to Aurand, the purpose of a fitness evaluation is to ascertain a defendant's understanding of "the adversarial nature of the courtroom proceedings, as well as the roles and responsibilities of the individuals in the court." A fitness evaluation is also designed to ascertain a defendant's ability to assist in his or her defense.

¶ 5        As part of the evaluation, Aurand interviewed defendant for about 3½ hours. The interview took longer than usual because many of defendant's answers were "circumstantial" or "tangential." Aurand explained that an answer is circumstantial when the interviewee provides a lot of information before actually answering the question. An answer is tangential when it is irrelevant to the question. Aurand offered examples from defendant's evaluation. When asked about the nature of his relationship with his attorney, defendant mentioned that she had used the word "investigate." According to Aurand, defendant then "went off on a lengthy speech about how that implied that [defense counsel] was portraying herself as a law enforcement officer, a detective, who would investigate the ins and outs of the *** alleged offense." Defendant had to be redirected to Aurand's question several times. Aurand also testified that,

when she explained that the evaluation would not be confidential, defendant "went *** on a lengthy discussion about how *** his belief was that the news should get [the evaluation], it holds people accountable, and that his belief was that he was wronged in the defense in this case." Aurand stated, "[Defendant] kind of went on along that bend until he was redirected again so that I could ensure that he understood that this was not a confidential evaluation just between he and I."

¶ 6    Aurand testified that she "redirected" defendant both verbally and with the "time out" hand gesture. Defendant gave direct answers about 10% of the time. Otherwise, he needed to be redirected. Defendant displayed an understanding of the basic nature of the roles of the individuals in the courtroom as well as the adversarial nature of the courtroom. However, he "showed a great deal of distrust and concern that his attorney had misled him as well as made motions that he believed *** would not benefit his case." At times, defendant contradicted himself. For instance, he was concerned that a video recording of his encounter with police had been altered to show him in a negative light. However, he complained that his attorney's attempt to bar the recording from being admitted as evidence was detrimental to his case.

¶ 7    According to Aurand, when she asked defendant about his background, his answers were often tangential and circumstantial. Defendant talked very quickly and "interrupted himself without awareness that he interrupted himself." Several times, Aurand had to ask defendant to finish his sentences so that she could understand what he was trying to communicate. Aurand testified that defendant's difficulty discussing his background suggested that he would have difficulty conveying information to his attorney. Defendant's overall demeanor was "[l]abile and somewhat anxious and suspicious." Aurand explained that "labile refers to something that's constantly changing." Aurand added that in "the three-plus hours we talked, [defendant was] laughing, crying, speaking loudly and angrily and speaking softly and cooperatively, kind of all across the board."

¶ 8    Aurand testified that defendant met the diagnostic criteria for bipolar I disorder. She concluded that defendant would be unable to assist in his trial and was therefore unfit.

¶ 9    Defendant argues on appeal that the trial court erred by directing a verdict of unfitness. Defendant also argues that, by failing to establish that he was fit, his attorney violated his right to the effective assistance of counsel. Before considering these issues, we note, as have both parties, that this appeal is moot because defendant has been found to have been restored to fitness. Defendant argues, however, that the public-interest exception to the mootness doctrine applies. "The public interest exception has three requirements: (1) the question presented must be public rather than case-specific in nature; (2) an authoritative determination is needed to guide public officers; and (3) the question is likely to recur." *People v. Holt*, 2014 IL 116989, ¶ 47. We conclude that both issues defendant raises meet all three requirements.

¶ 10    Both issues raised are public in nature. First, defendant asks us to hold that a directed verdict may not be entered in a fitness hearing before a jury when the defendant insists that he or she is fit but the State and defense counsel take the opposite position. Second, defendant asks us to hold that when a defendant insists that he is fit, and the evidence does not clearly show otherwise, defense counsel's failure to advocate the defendant's position is ineffective assistance of counsel, *per se*. Both these issues raise legal questions of broad applicability, and an authoritative determination is necessary to guide courts, prosecutors, and defense attorneys. Finally, it is likely that, in future cases, defendants will likewise insist that they are fit when the State and defense counsel believe otherwise. It is also likely that many of these cases will

- 3 -

be resolved by a directed verdict and that questions will arise as to defense counsel's duty to advocate the defendant's position. Accordingly, we will consider the merits of the appeal.

¶ 11 A criminal defendant's right to due process precludes trial if he or she is unfit. *People v. Shum*, 207 Ill. 2d 47, 57 (2003). "A defendant is unfit to stand trial if his mental or physical condition prevents him from understanding the nature and purpose of the proceedings against him or to assist in his defense." *Id.* A fitness hearing must be held when there is a *bona fide* doubt as to the defendant's fitness. *Id.* Either the defendant or the State may demand a jury in a fitness hearing, and the trial court may order a jury on its own motion. 725 ILCS 5/104-12 (West 2016). *People v. Speck*, 41 Ill. 2d 177, 205 (1968), and *People v. Brown*, 31 Ill. 2d 415, 420 (1964), illustrate that, in proper cases, the trial court may enter a directed verdict in a fitness hearing. "[V]erdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

¶ 12 Defendant argues that, because defense counsel did not advocate his position that he was fit, he had to rely on the State to do so. However, because the State also took the position that defendant was unfit, he had no opportunity to establish his fitness. According to defendant, when the State rests without meeting its burden of proof, the court will not know whether the State withheld evidence that might have shown that the defendant was fit. Defendant contends that the State refrained from introducing certain documents that he filed *pro se* that could have persuaded the jury that he was capable of assisting in his defense. According to defendant, "[t]he jury fitness hearing *** was uncontested and was never intended to result in the jury reaching a verdict." Defendant argues that, in light of these circumstances, the directed verdict deprived him of the opportunity to prove that he was fit.

¶ 13 It is clear that defense counsel's duty to a defendant does not necessarily obligate counsel to adopt the defendant's position as to his or her fitness. In *Holt*, 2014 IL 116989, ¶ 51, our supreme court observed as follows:

> "No plausible interpretation of the right to counsel would require defendant's lawyers to fight for an outcome that, in counsel's estimation—and in fact—would violate due process. The due process clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial. [Citation.] As the Supreme Court made clear in *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996): ' "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. [Citation.]" ' [Citation.] In *Cooper*, the Court stated that a defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. [Citation.] Where a defendant does not have that ability, how can a defendant make informed decisions regarding the course of her representation? In *Pate v. Robinson*, 383 U.S. 375, 384 (1966), the Court observed that it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial. It would seem to us a corollary principle that such a defendant may not direct defense counsel to do so."

Furthermore, although the State bears the burden of showing that the defendant is fit, the prosecutor may, for ethical reasons, refrain from attempting to meet that burden. "The duty of a public prosecutor is to seek justice, not merely to convict." Ill. R. Prof'l Conduct (2010) R. 3.8 (eff. Jan. 1, 2016). A prosecutor should not seek to convict an unfit defendant; doing so would deprive the defendant of due process of law.

¶ 14 Defendant argues that the principles governing directed verdicts were developed in cases involving adversarial proceedings in which the trial court can presume that the party with the burden of proof will introduce all of the evidence he or she can to meet that burden. Defendant insists that those principles are unsuited to fitness proceedings in which the prosecutor and defense counsel are not in an adversarial posture. According to defendant, the entry of a directed verdict is proper only in cases like *Speck* and *Brown*. In those cases, our supreme court affirmed directed verdicts of fitness where all the experts who testified—one expert in *Brown* and seven in *Speck*—concluded that the defendant was fit. Defendant argues that because the prosecutor and defense counsel will not necessarily assume an adversarial posture in a fitness proceeding, the trial court has no assurance that the parties have presented all evidence bearing on fitness. Thus, according to defendant, verdicts should not be directed in cases less "one-sided" than *Speck* and *Brown*. In his reply brief, defendant argues that a "proper case" for directing a verdict is one "in which the record is overwhelmingly one-sided with respect to fitness, to the point where both the trial judge and the reviewing court can be confident that no evidence contrary to the directed verdict exists." We disagree.

¶ 15 Neither *Speck* nor *Brown* established a special standard for deciding directed-verdict motions in fitness proceedings. *Speck* specifically employed the *Pedrick* standard, and *Brown* was decided before the *Pedrick* standard was announced. Moreover, establishing a different standard would not necessarily guarantee that the State has introduced all evidence that might establish that a defendant is fit for trial. Indeed, the evidence might well be "one-sided" only because the State has decided not to present other evidence (as is its prerogative).

¶ 16 Defendant does not explain how the trial court could ever be confident that the State has offered all available evidence. In any event, it is not clear what would be accomplished by denying an otherwise meritorious motion for a directed verdict. Doing so would not result in the jury hearing any additional evidence from the State, and defense counsel, having moved for a directed verdict of unfitness, presumably would not introduce evidence that the defendant was fit.

¶ 17 We next consider defendant's argument that he did not receive the effective assistance of counsel. Ordinarily claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." However, pursuant to *United States v. Cronic*, 466 U.S. 648, 659 (1984), and *People v. Hattery*, 109 Ill. 2d 449, 461 (1985), prejudice is presumed when defense counsel entirely fails to subject the State's case to meaningful adversarial testing.

¶ 18 Our analysis thus far has assumed that, per *Holt*, defense counsel was not obligated to defer to defendant's desire for a finding that he was fit to stand trial. Defendant notes, however, that the *Holt* court expressly limited its holding, stating, "Where, *as here*, the evidence *clearly* indicates that defendant is unfit to stand trial, but a defendant contends that he or she is fit,

- 5 -

defense counsel is not obligated to adopt the defendant's position and argue for a finding of fitness." (Emphases added.) *Holt*, 2014 IL 116989, ¶ 56. Defendant argues that he was not clearly unfit and thus his attorney's failure to advocate his position that he was fit constituted ineffective assistance of counsel *per se* under *Cronic* and *Hattery*. We disagree. *Holt*'s limited holding—that counsel is not required to defer to the defendant when the defendant is clearly unfit—does not imply that the converse is true, *i.e.*, that counsel *must* defer to the defendant when there is arguably some possibility that the defendant is fit. In our view, requiring counsel to defer to the defendant whenever he or she *might* be fit creates an unacceptable risk of violating the defendant's right to due process.

¶ 19 For the foregoing reasons, we conclude that the trial court did not err in granting defendant's motion for a directed verdict. We further conclude that defendant was not deprived of his right to the effective assistance of counsel. We therefore affirm the judgment of the circuit court of Stephenson County.

¶ 20 Affirmed.